UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                                                Chapter 11

       Empire Plaza Realty LLC,                         Case no.  13-73526

                        Debtor.

------------------------------------------------------------x

## MOTION TO EXCUSE COMPLIANCE WITH SECTION 543 OF THE BANKRUPTCY CODE

      JJAM Capital LLC (the "Mortgagee"), the holder of a first mortgage on the property

owned by Empire Plaza Realty LLC, (the "Debtor") located at 300 Hempstead Turnpike, West

Hempstead, New York 11552, as and for its motion for the entry of an order excusing

compliance by a court-appointed receiver with § 543 of title 11 of the United States Code (the

"Bankruptcy Code") pursuant to 11 U.S.C. §§ 543(d)(1) respectfully states as follows:

**(a) The Debtor has mismanaged its business not only failing by to pay its mortgage in the ordinary course, but by reneging on settlement agreements with the Mortgagee which has resulted in two foreclosure actions,**

**(b) Given the Debtor's record of failed settlements, a successful reorganization in this case is unlikely, particularly since at this point the Property cannot even support real estate taxes and insurance, let alone a mortgage, and**

**(c) Since it is likely that the Property will be back in foreclosure in the not too distant future, the Bankruptcy Court should maintain the status quo in the meantime and excuse compliance with section 543(a) and (b) of the Bankruptcy Code.**

## BACKGROUND

      1.      On July 3, 2013, the Debtor filed a Chapter 11 petition under Title 11 of

the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code").

      2.      The Debtor owns the real property located at 300 Hempstead Turnpike,

West Hempstead, New York 11552.  The Property is improved by a two story 31,710 square foot

building configured for 7 retail tenants and 23 office tenants.  The property has 47 on-site

parking spaces.  The Debtor's schedules indicate a $3,100,000 value; substantially the same as

the Mortgagee's May 2012 appraisal indicating a $3,150,000 value.

   3. As set forth on Exhibit A hereto, as of June 6, 2013, JJAM Capital LLC

(the "Mortgagee") asserts a first mortgage claim in the amount of approximately $3,699,772

against the Property.  In addition, the Debtor's Petition indicates real estate taxes totaling

$116,412.  Based upon the value of the Property, the Mortgagee is under-secured.

   4. The Debtor scheduled general unsecured claims totaling $343,884.

   5. The origin of the Debtor's financial problems appears to be the result, in

part, of serious mismanagement as the Property's rent roll and occupancy has dropped from 90%

to 35% occupancy over the course of the two years.  This occupancy probably results from the

reluctance of tenants to locate a business in a property that has been in and out of foreclosure for

a couple of years.  By way of further background, when the Debtor first encountered problems

paying its mortgage, on May 17, 2010, Intervest entered into a modification agreement reducing

the Debtor's interest pay rate to 3% with the balance deferred to maturity.  A year later, Intervest

entered into another modification agreement continuing the deferral of interest payments.  Even

with that relief, the Debtor defaulted.  Intervest started a foreclosure action (index no. 11540/12.

In that action, Intervest agreed to allow the Debtor to reinstate.  The action was discontinued and

the receiver discharged.  The Debtor defaulted the next month and has paid nothing since

January.  Thus, a new foreclosure action was started and a new receiver appointed.  The Debtor

has not accounted for any of the Property income since the Debtor stopped paying in January.

6.      Thus, by order entered May 21, 2013 (the "Receivership Order," a copy of

which is annexed hereto as Exhibit B, Jeffrey Miller was appointed receiver (the "Receiver") by

the Supreme Court of Nassau County.  The Receiver took possession and control of the Property

on June 20, 2013.

7.      The Receivership Order precludes the Debtor from collecting rents.

Nonetheless, as indicated by correspondence annexed hereto as Exhibit C, the Debtor has

continued to attempt to collect rent and threatened tenants with immediate eviction for

nonpayment of rent to the Debtor, in contradiction of the State Court order.  This has created

confusion among the tenants and likely nonpayment.  Furthermore, the Debtor has turned over

no rents or security deposits to the Receiver.

8.      It bears reiterating that the Debtor has accounted for no rents it has

collected during the period of mortgage nonpayment.  Meanwhile bills have gone unpaid

including water, electricity, real estate taxes and insurance.  Worse, based upon comments to the

undersigned by Debtor's counsel, it appears that there will be continuing shortfalls necessary to

pay expenses, taxes and insurance in the near term.

## **RELIEF REQUESTED HEREIN**

9.      By this Application, the Mortgagee seeks the entry of an order excusing compliance with section 543 of the Bankruptcy Code pursuant to section 543(d)(1) of the Bankruptcy Code.

10.      Sections 543(a) and (b)(1) of the Bankruptcy Code require a custodian to deliver to the trustee any property of the debtor held by such custodian and to turnover management to the Debtor.  Section 543(d)(1) of the Bankruptcy Code, however, permits the court to excuse turnover:

> after notice and a hearing, the bankruptcy court—(1) may excuse compliance with subsection (a) . . . if the interests of creditors . . . would be better served by permitting the custodian to continue in possession, custody or control.

11 U.S.C. § 543(d).

11.      In determining whether cause exists to allow a receiver to retain possession and administration of the property, the bankruptcy court must analyze the following factors: (a) whether there will be sufficient income to fund a successful reorganization; (b) whether the debtor will use the property for the benefit of its creditors; (c) whether there has been mismanagement by the debtor; and (d) whether there are preferences which a receiver is not empowered to avoid. *In re Lizeric Realty Corp.*, 188 B.R. 499, 506-07 (Bankr. S.D.N.Y. 1995); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991).

4

12.     "Section 543(d) cases are fact intensive, turning upon whether the assets of a particular debtor should be administered by the existing custodian or returned to the debtor." *In re Uno Broad. Corp.*, 167 B.R. 189, 200-01 (Bankr. D. Ariz. 1994) (allowing receiver to remain in place when receiver was moving expeditiously and professionally to manage debtor's affairs and substantial evidence of debtor's mismanagement was presented).

13.     Two of the elements in considering whether to excuse Receiver from turning over the Property to the Debtor are whether the Debtor mismanaged the Property and whether the Debtor will use the Property for the benefit of its creditors. *In re Lizeric Realty*, 188 B.R. at 506-07.

14.     In the face of the Debtor's prior mismanagement which has resulted in the loss of nine tenants over the course of a year, there is no basis to conclude that Debtor will use the Property for the benefit of its creditors.  In addition, the Debtor reneged its modification agreement and then on mortgage payments before the ink was even dry on the subsequent deal to reinstate the mortgage.  The Debtor left real estate taxes unpaid and has not accounted for the rental proceeds it has collected while defaulting on these obligations.

15.     In similar circumstances where evidence of mismanagement exists, courts routinely excuse the receiver from compliance under § 543(d)(1) of the Bankruptcy Code to avoid the unnecessary confusion, expense and disruption attendant to requiring compliance with subsections (a) through (c) of § 543 of the Bankruptcy Code. *See In re Lizeric Realty Corp.*, 188 B.R. at 506-507 (court found that debtor previously mismanaged the property where, prior to the

5

receiver's appointment, debtor defaulted under two mortgages, failed to pay taxes and permitted liens to be filed against the property); *In re Dill*, 163 B.R. 221,226 (E.D.N.Y. 1994)(affirming bankruptcy court holding that receiver should be excused from turnover requirements for mismanagement where Debtor spent security deposits, failed to obtain certificates of occupancy and secured creditor had to pay for repairs to the properties); *In re CCN Realty Corp.*, 19 B.R. 526 (Bankr. S.D.N.Y. 1982) (receiver allowed to continue in possession of property where Debtor has no incentive to collect rent other than to satisfy the secured claim asserted by the bank); *In re Plantation Inn Partners*, 142 B.R. 561, 563 (Bankr. S.D. Ga. 1992) (receiver excused from turnover where court found that debtor had defaulted on mortgage payments, failed to pay taxes, paid over $50,000.00 to debtor's principal or his affiliated companies for "management services" without documentation or justification, failed to report revenues and pay franchise fees to its franchisor, failed to place casualty and liability insurance on the property, allowed flood insurance to lapse, hired an unqualified manager for the hotel, and failed to maintain current accounting records); *In re WPAS, Inc.*, 6 B.R. 40, 44 (Bankr. M.D. Fla. 1980) (court permitted receiver to remain in possession and control of assets where debtor disregarded its obligation to file payroll tax returns and pay FICA taxes and drew checks on accounts without determining the sufficiency of funds).

   16. Not only has the Debtor failed to properly manage the Property while in possession of it, Debtor ignored its obligations under the Receivership Order by failing to turn over to the Receiver any rents collected or tenant security deposits.

17.     Another consideration in determining whether to excuse the Receiver from the turn over requirements of § 543 of the Bankruptcy Code is whether there will be sufficient income to fund a successful reorganization. *In re Lizeric Realty Corp.*, 188 B.R. at 506-07.  In this case, the fact that the Property does not cover operating expenses suggests that the Debtor is going to need a large capital infusion to propose a feasible plan.

18.     It must also be noted that based upon the value of the Property as estimated by both the Debtor and the Mortgagee, the Mortgagee will not only be the Debtor's largest secured creditor, it will also have a deficiency claim that will dominate the unsecured class. In light of the Mortgagee's dominance of both the secured and unsecured classes of creditors, it will be impossible for Debtor to reorganize without the Mortgagee's consent.

19.     In short, absent an implausibly large capital infusion relative to the value of the Property, the Debtor has no likelihood of confirming a plan.  Since it is likely, therefore, that the Property will be back in foreclosure in the not too distant future, the Bankruptcy Court should maintain the status quo in the meantime.

20.     As indicated by the stipulation annexed hereto as Exhibit D, pending determination of this motion by the Bankruptcy Court, the Debtor consented to the Receiver remaining in possession.

21.     The Mortgagee has not scheduled this motion for a hearing in the meantime because the Mortgagee and the Debtor agreed further that this motion would be heard

together with the Debtor's anticipated motion to use cash collateral.  The Debtor has represented

that it would be moving by Order to Show Cause on its cash collateral motion and that at that

time the Debtor and the Mortgagee would cooperate in the scheduling of this motion with the

cash collateral motion.

## CONCLUSION

WHEREFORE, the Mortgagee respectfully requests that the Court grant the relief

sought herein, that Court grant such other relief as may be just and proper.

Dated: New York, New York
     July 12, 2013

                   **BACKENROTH FRANKEL & KRINSKY, LLP**
                   Attorneys for the Mortgagee


                   By:     s/Mark A. Frankel
                           489 Fifth Avenue
                           New York, New York 10017
                           (212) 593-1100

Exhibit A

# JJAM CAPITAL LLC

June 6th, 2013

**VIA ELECTRONIC MAIL**
Empire Plaza Realty LLC
c/o Morris Khakshour
10 West 46th Street #1202
New York, NY 10036

> **Re:    Without Prejudice Payoff Letter relating to Mortgage Note dated as of September 17, 2008 in the original principal amount of $3,400,000.00 by Empire Plaza Realty LLC as borrower to Intervest National Bank**

Ladies and Gentlemen:

Reference is made to that certain Mortgage Note (the "Mortgage Note"), dated as of September 17, 2008, and modified on July 29th 2011, between Intervest National Bank, the lender, who assigned all of its rights, title, and interest to the current holder, JJAM Capital LLC ("JJAM"), and Empire Plaza Realty LLC ("Empire") as borrower. All capitalized terms used herein and not otherwise defined shall have the meaning assigned to such term in the Mortgage Note.

We have been advised that Empire intends to pay off all of the outstanding indebtedness under the Mortgage Note to JJAM. Empire has also requested that JJAM provide Empire with the amount that is necessary to pay off, satisfy, and discharge in full all of the principal, interest, fees, and other amounts owing by Empire to JJAM under the Mortgage Note (the "Payoff Figures"). The Payoff Figures for Empire as of June 4, 2013 (the "Computation Date") under the Mortgage Note are as follows (collectively, together with attorneys fees, any additional interest accruing, or fees and expenses incurred after the Computation Date until such date (the "Payoff Date") that Empire tenders and JJAM accepts, the total amount that must be paid by Empire, the "Payoff Amount"):

| | |
|---|---|
| Outstanding Principal Amount | $ 3,311,730.01 |
| Note Interest [01/01/2013 – 03/21/13 @3.5%] | $ 25,757.92 |
| Default Interest [03/22/2013 – 06/04/13@24%] | $ 165,586.50 |
| Late Charges [Jan., Feb. & March 2013] | $ 11,073.60 |
| Negative Escrows [Delinquent Taxes & Insurance] | $ 26,591.57 |
| Deferred Interest Pursuant to Modification Agreement | $ 125,915.28 |
| April 1, 2010 – June 30, 2011 (465 days @ 276.13/day) | |
| Prepayment Fee [1%] | $ 33,117.30 |

Legal Fees[1]

Accruing

**Payoff Amount:**

**$3,699,772.18**

From and after the Computation Date and until the Payoff Date, interest shall continue to accrue on the unpaid principal amount at the rate of $ 2,177.57 per day.

JJAM hereby expressly reserves all claims, rights, and remedies available to it under the Mortgage Note and all of the other documents evidencing or relating to the Mortgage Note, and all claims, rights, and remedies, including, without limitation, actions against any and all collateral and/or Empire and any other obligor or guarantor, and no statement in this letter shall be construed as a waiver or modification of any claims, right or remedies of JJAM under such documents. Please be advised that JJAM's willingness to accept the Payoff Amount in full satisfaction of Empire's obligations is without prejudice to its right to full payment of any other amounts due under the Mortgage Note or any other document, including legal fees and other costs, which right is hereby expressly reserved. Moreover, please be advised that JJAM intends to seek reimbursement for all of its legal fees and costs as provided under the Mortgage Note and any related loan documents. JJAM has retained counsel and such fees and costs are being incurred. In addition, JJAM expressly reserves its right to pursue all additional remedies or claims which may exist at law or in equity. The remedies herein provided are cumulative and not exclusive of any remedies provided by law, equity and/or under the Mortgage Note. Any failure by JJAM to exercise or any delay by JJAM in asserting claims and/or exercising any such rights or remedies is not intended to be, and will not for any purpose, constitute a waiver of such claims, rights or remedies, or of any default. Until Empire tenders and JJAM accepts any Payoff Amount, JJAM expressly reserves the right to recalculate the Payoff Amount if JJAM becomes aware of a greater or different amount to which it is entitled, including, without limitation, to recalculate the Payoff Amount in advance of an effective exercise of Empire's right of redemption.

By giving this letter to Empire, JJAM does not waive any other defaults that exist or may hereafter occur. JJAM insists upon and demands strict compliance with the terms of the Mortgage Note. No modification, amendment, extension, discharge, termination or waiver of any provision of the Mortgage Note, nor consent to any departure by Empire therefrom, shall in any event be effective unless the same shall be in a writing signed by the party against whom enforcement is sought, and then such waiver or consent shall be effective only in the specific instance, and for the specific purpose, for which given. Any partial payment accepted by JJAM shall neither reinstate the term of any of the Mortgage Note nor constitute a novation, an agreement by JJAM to forbear from collecting the full amount of the obligations due under the Mortgage Note, or a waiver by JJAM of any of its rights or remedies under the Mortgage Note and applicable law, all of which are hereby reserved by JJAM.

Except as otherwise expressly provided herein, no notice to, or demand on Empire, shall entitle Empire to any other or future notice or demand in the same, similar, or other circumstances. Any provision hereof which is prohibited or unenforceable in any jurisdiction

---

[1] Please contact this office approximately five business days prior to closing to get an updated figure for legal fees expended in the foreclosure action, including, but not limited to any fees incurred in the preparation or attendance for satisfaction of the loan.

shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

Notwithstanding the foregoing, nothing herein shall be deemed a release or termination of any of Empire's or any other person's obligations to JJAM under or in respect of the Mortgage Note solely to the extent that such obligations are expressly stated to survive the payment in full of principal, interest, and all other amounts payable under the Mortgage Note or any other document.

Very truly yours,

JJAM Capital LLC

By:

Name:    Adam Nagin
Title:    Member



**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 07-01-2013          Record and Return To:
Recorded Time: 11:29:43 a          ATTN ADAM NAGIN
                                   SUPERIOR MANAGEMENT INC
  Liber Book: M  38869             50 BANK ST
  Pages From:      700             NEW YORK, NY  10014
        To:       704

    Control
    Number:  1183
      Ref #:
    Doc Type: M23  ASSIGN MORTGAGE

    Refers to: Book: M 33297 Page: 486

Location:                          Section Block    Lot    Unit
HEMPSTEAD (2820)                   0033    00502-00 00233

                              Taxes Total              .00
                           Recording Totals         215.00
EXO001                         Total Payment         215.00

    THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                            MAUREEN O'CONNELL
                            COUNTY CLERK



1613-222N

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: That INTERVEST NATIONAL BANK (the "Assignor"), having an address at One Rockefeller Plaza, Suite 400, New York, NY 10020, in consideration of Ten Dollars ($10.00) and other good and valuable considerations, received from or on behalf of JJAM CAPITAL LLC (the "Assignee"), having an office at c/o Superior Management Incorporated, 50 Bank Street, New York, NY 10014, does hereby grant, bargain, sell, assign, transfer and set over unto the Assignee all of its right, title and interest in and to the following:

See Schedule A annexed hereto.

Regarding and covering that certain real property commonly known as 300 Hempstead Turnpike, West Hempstead, New York, designated as Section 33, Block 502, Lot 233 on the tax map of Nassau County.

Together with the notes described in said mortgages, and the moneys due and to grow due thereon with the interest.

Said mortgages have not been further assigned of record.

This assignment is not subject to Section 275 of the Real Property Law since it is an assignment within the secondary mortgage market.

This assignment is being made without recourse, representation or warranty, express or implied. By its acceptance of this assignment, the Assignee hereby accepts and assumes all obligations and liabilities of the Assignor under said mortgages and notes.

This assignment shall inure to the benefit of the successors, assigns and legal representatives of the Assignor and the Assignee, and shall be binding upon the successors, assigns and legal representatives of the Assignor and the Assignee.

TO HAVE AND TO HOLD the same unto the Assignee, its legal representatives, successors and assigns forever.

IN WITNESS WHEREOF, the Assignor has executed this assignment as of the 4ᵗʰ day of June, 2013.

ASSIGNOR:
INTERVEST NATIONAL BANK

By: _____

Name: Lowell S. Dansker
Title: Chief Executive Officer

## SCHEDULE A TO ASSIGNMENT OF MORTGAGE

### Schedule of Mortgages

1.     Mortgage dated September 17, 2008, in the principal amount of $3,400,000.00, made by Empire Plaza Realty LLC to Intervest National Bank, and recorded in the Office of the Nassau County Clerk on October 16, 2008, in Liber 33297, Page 486;

Which Mortgage mas modified by Modification Agreement dated May 17, 2010, made by and between Empire Plaza Realty LLC and Intervest National Bank, and recorded in the Office of the Nassau County Clerk on June 22, 2010, in Liber 34927, Page 58;

Which Mortgage mas further modified by Modification Agreement dated July 29, 2011, made by and between Empire Plaza Realty LLC and Intervest National Bank, and recorded in the Office of the Nassau County Clerk on August 22, 2011, in Liber 36310, Page 497.

State of New York

        ss:

County of New York

On the 4th day of June in the year 2013 before me, the undersigned, personally appeared Lowell S. Dansker personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed, the instrument.

RECORD & RETURN TO:

ATTN: ADAM NAGIN
SUPERIOR MANAGEMENT INC.
50 BANK STREET
NEW YORK NY 10014

## ALLONGE TO PROMISSORY NOTE

This Allonge, dated as of June 4, 2013, is attached to and made a part of that certain Mortgage Note in the original principal amount of $3,400,000.00, dated September 17, 2008, made by Empire Plaza Realty LLC, payable to Intervest National Bank, or order.

Pay to the order of JJAM CAPITAL LLC, its successors and/or assigns, without recourse, representation or warranty, express or implied, by the undersigned.

INTERVEST NATIONAL BANK

By: _____

Name:  Lowell S. Dansker
Title:   Chief Executive Officer

**[NO FURTHER TEXT ON THIS PAGE]**

## ASSIGNMENT OF DOCUMENTS

**FOR VALUE RECEIVED**, the undersigned, INTERVEST NATIONAL BANK ("Assignor") as the seller under that certain Mortgage Loan Purchase Agreement, dated as of June 4, 2013, between Assignor and Assignee (the "Purchase Agreement"), does hereby grant, bargain, sell, assign, set over and transfer, to JJAM CAPITAL LLC, having an office at c/o Superior Management Incorporated, 50 Bank Street, New York, NY 10014 ("Assignee") as the purchaser under the Purchase Agreement, without recourse, representation or warranty, except as set forth in the Purchase Agreement, all right, title and interest of Assignor in, to and under all of the Loan Documents (as defined in the Purchase Agreement), including those documents and instruments listed on Exhibit A hereto.

This assignment is given in connection with, and in consideration of, Assignee's purchase of the Mortgage Loan (as defined in the Purchase Agreement), constituting good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

IN WITNESS WHEREOF, Lender has caused this Assignment to be executed and delivered as of the 4th day of June, 2013.

        **ASSIGNOR:**

        **INTERVEST NATIONAL BANK**

        By: _____

        Name: Lowell S. Dansker
        Title:   Chief Executive Officer

**EXHIBIT A**

## DOCUMENTS

1.  Guaranty Agreement dated September 17, 2008, made by Masih Kaffash, Ely
    (a/k/a Eli) Kaffash and Morad (a/k/a Morris) Khakshour, in favor of Intervest
    National Bank.

2.  Reaffirmation of Guaranty Agreement dated May 17, 2010, , made by Masih
    Kaffash, Ely (a/k/a Eli) Kaffash and Morad (a/k/a Morris) Khakshour, in favor of
    Intervest National Bank.

3.  Reaffirmation of Guaranty Agreement dated July 29, 2011, , made by Masih
    Kaffash, Ely (a/k/a Eli) Kaffash and Morad (a/k/a Morris) Khakshour, in favor of
    Intervest National Bank.

4.  Guaranty of Payment and Performance dated July 29, 2011, made by Masih
    Kaffash, Ely (a/k/a Eli) Kaffash and Morad (a/k/a Morris) Khakshour, in favor of
    Intervest National Bank.

5.  Reaffirmation of Guaranty Agreement dated July 29, 2011, , made by Masih
    Kaffash, Ely (a/k/a Eli) Kaffash and Morad (a/k/a Morris) Khakshour, in favor of
    Intervest National Bank.

6.  Loan Policy of Title Insurance issued by Fidelity National Title Insurance
    Company under Policy No. 2730732-20177.

7.  UCC-1 Financing Statement listing Empire Plaza Realty LLC, as Debtor, and
    Intervest National Bank, as Secured Party, filed with Office of the Nassau County
    Clerk on October 16, 2008, as UC08004062.

8.  UCC-1 Financing Statement listing Empire Plaza Realty LLC, as Debtor, and
    Intervest National Bank, as Secured Party, filed with Office of the Nassau County
    Clerk on January 31, 2011, as UC11000386.

9.  UCC-1 Financing Statement listing Empire Plaza Realty LLC, as Debtor, and
    Intervest National Bank, as Secured Party, filed with New York Department of
    State on November 10, 2008, as Filing Number: 200811100756382.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Intervest National Bank
One Rockefeller Plaza, Suite 400
New York, New York 10020-2002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| EMPIRE PLAZA REALTY LLC | | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| | | | | | | |
| 1c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE | COUNTRY |
| 98 Cuttermill Road, Suite 442B | | | Great Neck | | 11021 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | | |
| 26-2556231 | | Real Estate | New York | | | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | | | |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | | |
| | | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| Intervest National Bank | | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Rockefeller Plaza, Suite 400 | New York | NY | 10020-2002 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Schedule I annexed hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| Intervest - 300 Hempstead | | | | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| OR **EMPIRE PLAZA REALTY LLC** | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | | |
| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| | | | | |
|---|---|---|---|---|
| 12a. ORGANIZATION'S NAME | | | | |
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☑ fixture filing.

14. Description of real estate:

**300 Hempstead Turnpike, West Hempstead, New York**

**Section: 33, Block: 502, Lot: 233**

**As more particularly described in Schedule A annexed hereto.**

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

## SCHEDULE I

(1) all machinery, equipment, apparatus, fixtures and instruments of conveyance located at the Mortgaged Premises;

(2) all documents of title, policies and certificates of insurance, and other rights to payment, together with all guarantees and security therefor (including any security deposits) relating solely to the Mortgaged Premises;

(3) all contract rights, licenses, legal claims and claims for tax refunds relating solely to the Mortgaged Premises;

(4) all accounts of Debtor with the Secured Party relating solely to the Mortgaged Premises, all investments and reimbursements of amounts from time to time credited to such accounts, and all interest, dividends, distributions and other proceeds payable on or with respect to such accounts;

(5) all leases, licenses, permits, approvals, plans and specifications, contracts and agreements of any kind and nature whatsoever, in connection with the Mortgaged Premises, whether oral or written, and all profits, rentals, receipts, income and proceeds arising therefrom;

(6) the rents, proceeds, products, issues, profits and accessions of and to all of the foregoing;

(7) all utility or municipal deposits made by or on behalf of Debtor or made in connection with the Mortgaged Premises;

(8) all plans, drawings, specifications, site plans, subdivision maps, sketches, samples, contracts and agreements, now or hereafter made, which relate to the Mortgaged Premises, its maintenance, operation, restoration, management, construction, alteration, improvement and/or development; and

(9) any and all permits, certificates, warranties, guarantees and approvals, howsoever characterized, issued or in any way furnished in connection with the Mortgaged Premises.

# FEDERAL STANDARD ABSTRACT, INC

## Title Number:  FSA282-02856N

## S C H E D U L E  A

ALL that certain plot, piece or parcel of land, situate, lying and being at West Hempstead, in the Town of Hempstead, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Hempstead Turnpike with the easterly side of Arden Boulevard;

RUNNING THENCE along the easterly side of Arden Boulevard, North 10 degrees 25 minutes 40 seconds East, a distance of 185.23 feet to the corner formed by the intersection of the easterly side of Arden Boulevard with the southerly side of Parker Avenue (Park Avenue);

THENCE along the southerly side of Parker Avenue, South 79 degrees 34 minutes 20 seconds East, a distance of 169.63 feet;

THENCE South 11 degrees 06 minutes 10 seconds West, a distance of 184.17 feet to the northerly side of Hempstead Turnpike;

THENCE along the northerly side of Hempstead Turnpike, North 79 degrees 56 minutes 20 seconds West, a distance of 167.46 feet to the corner aforementioned at the point or place of BEGINNING.

For Conveyancing    TOGETHER with all the right, title and interest of the party of the first part, of, in
ONLY              and to the land lying in the street in front of and adjoining said premises.

For Information    The policy to be issued under this report will insure the title to such buildings and
ONLY             improvements erected on the premises which by law constitute real property.

NC
CLERK



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 10-16-2008          Record and Return To:
Recorded Time:  2:24:37 p          INTERVEST NATIONAL BANK
                                   ONE ROCKEFELLER PLAZA
    Liber Book: M  33297           SUITE 400
    Pages From:     486            NEW YORK, NY  10020-2002
            To:     536

        Control
        Number:  1781
        Ref #: CZ  026928
        Doc Type: M07  MORTGAGE-COMMERCIAL


Location:                    Section Block    Lot    Unit
HEMPSTEAD (2820)             0033    00502-00 00233

Consideration Amount:        3,400,000.00



                              Taxes Total         35,700.00
                           Recording Totals          305.00
TMS001                        Total Payment       36,005.00

    THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                        MAUREEN O'CONNELL
                        COUNTY CLERK

2008101601781

*Intervest National Bank*
*300 Hempstead Tpke*
*W. Hempstead N.Y.*

MORTGAGE
(And Assignment of Leases and
Rents and Security Agreement)

made by

EMPIRE PLAZA REALTY LLC,

Mortgagor

To

INTERVEST NATIONAL BANK,

Mortgagee

relating to Premises at

300 Hempstead Turnpike, West Hempstead, New York

Dated: September 17, 2008

*→ Commercial property*

# TABLE OF CONTENTS

|     |                                                                       | Page |
| --- | --------------------------------------------------------------------- | ---- |
| 1.  | Certain Definitions                                                   | 5    |
| 2.  | Payment of Indebtedness                                               | 7    |
| 3.  | Payment of Impositions, Insurance Premiums, Transfer Taxes            | 8    |
| 4.  | Deposits for Impositions, Insurance Premiums, Etc                     | 9    |
| 5.  | Insurance                                                             | 11   |
| 6.  | Damage or Destruction; Application of Insurance Proceeds              | 13   |
| 7.  | Condemnation                                                          | 15   |
| 8.  | Maintenance and Repair                                                | 17   |
| 9.  | Compliance with Laws, Ordinances; Environmental Matters               | 18   |
| 10. | Mortgagee's Right to Perform                                          | 22   |
| 11. | Liens                                                                 | 23   |
| 12. | Late Charges and Default Interest                                     | 23   |
| 13. | Right of Access and Entry; Inspections                                | 24   |
| 14. | Indemnity; Expenses                                                   | 24   |
| 15. | Mortgagee Not Responsible for Damage or Injury                        | 25   |
| 16. | Defaults                                                              | 25   |
| 17. | Remedies Upon Default                                                 | 27   |
| 18. | Waivers; Cumulative Remedies                                          | 29   |
| 19. | Transfers of the Mortgaged Property                                   | 29   |
| 20. | Tenant Leases                                                         | 31   |
| 21. | Assignment of Leases and Rents                                        | 32   |
| 22. | Payments From Deposits; Mortgagee's Liability                         | 33   |
| 23. | Prepayment                                                            | 34   |
| 24. | Procedure for Payment at Maturity or Upon Prepayment                  | 35   |
| 25. | Reduction of Principal Balance By Insurance and Condemnation Proceeds | 35   |
| 26. | Junior Mortgages                                                      | 35   |
| 27. | Notices                                                               | 35   |
| 28. | Mortgagor's Certificate; Statement of Balances                        | 36   |
| 29. | Financial Statements and Other Information                            | 37   |
| 30. | Lien Law                                                              | 38   |
| 31. | Good Standing Mortgagor                                               | 38   |
| 32. | Partial Exculpation of Mortgagor                                      | 38   |
| 33. | Instruments of Further Assurance, Etc.                                | 38   |
| 34. | Conversion Offering Plans                                             | 39   |
| 35. | Intentionally Omitted                                                 | 39   |
| 36. | Miscellaneous                                                         | 39   |

SCHEDULE A
    Description of Land
SCHEDULE B
    Payment of Indebtedness
SCHEDULE C
    Undertaking
SCHEDULE D
    Satisfaction Undertaking

NC
CLERK

MORTGAGE
(And Assignment of Leases and
Rents and Security Agreement)

THIS MORTGAGE (AND ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT) (the "Mortgage"), made the 17ᵗʰ day of September, 2008, by EMPIRE PLAZA REALTY LLC, a New York limited liability company, having an address at 98 Cuttermill Road, Suite 442B, Great Neck, New York 11021 ("Mortgagor") to INTERVEST NATIONAL BANK, having an address at One Rockefeller Plaza, Suite 400, New York, New York 10020-2002 ("Mortgagee").

WITNESSETH, that to secure the payment of an indebtedness in the principal sum of THREE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($3,400,000.00), lawful money of the United States, to be paid with interest thereon to be computed from the date hereof according to a certain Note bearing even date herewith, and to secure the payment of all other amounts which may be or become due under this Mortgage or the Note and the compliance with all of the terms of this Mortgage and the Note, the Mortgagor hereby grants, bargains, sells, mortgages, warrants, pledges, assigns, transfers, and conveys to Mortgagee, and grants to Mortgagee a security interest in, the property described in the following paragraphs (a) through (j) (collectively the "Mortgaged Property"):

(a)    the land described in Schedule "A" annexed hereto and made a part hereof;

(b)    all additional lands or estates or interests therein hereafter acquired by Mortgagor for use in connection with the land described in (a) above, and all lands or estates or interests therein that may, from time to time, by supplemental mortgage or additional agreement, be made subject to the lien of this Mortgage (the land described in (a) above and the lands or estates or interests therein described in this paragraph (b) are collectively referred to as the "Land");

(c)    all improvements, structures and buildings, and any alterations thereto or replacements thereof, now or hereafter erected upon the Land, all fixtures, fittings, appliances, apparatus, machinery, materials and replacements thereof (other than those articles of personal property owned by tenants under "Leases," as defined in paragraph (d) below), now or at any time hereafter affixed to, attached to, placed upon or used in any way in connection with the use, enjoyment, occupancy or operation of the Land or such improvements, structures or buildings, including without limitation furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, washtubs, sinks, gas and electric fixtures, stoves, ranges, ovens, disposals, dishwashers, hood and fan combinations, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, kitchen equipment, laundry equipment, plants and shrubbery and all other furniture, furnishings, equipment and machinery, appliances, fittings and fixtures of every nature whatsoever now or hereafter owned or acquired by the Mortgagor and located in or on, or attached to, and used or intended to be used in connection with or with the operation of, the Land, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to

2

NC
CLERK
any of the foregoing (collectively, the "Improvements") (the Land and the Improvements are
hereinafter referred to collectively as the "Premises");

(d)     any and all leases, subleases and all other occupancy agreements (written or oral),
by concession, license or otherwise, for the Premises or any part thereof, now existing or
hereafter entered into between Mortgagor and tenants and occupants of the Premises (the
"Leases"), and all right, title and interest of the Mortgagor therein and thereunder, including cash
or securities deposited thereunder to secure performance by the tenants and occupants under the
Leases of their obligations thereunder, and any advanced rentals paid thereunder;

(e)     any and all furniture, furnishings, equipment and other articles of personal
property, together with all replacements and renewals thereof, other than those articles of trade
fixtures and other personal property owned by tenants under the Leases, now or at any time
hereafter placed upon, located in or used in any way in connection with the use, enjoyment,
occupancy and operation of the Premises (hereinafter collectively referred to as the
"Equipment");

(f)     Mortgagor's interest in any and all agreements, contracts, certificates, licenses,
permits, approvals, instruments and other documents, now or hereafter entered into pertaining to
the construction, reconstruction, operation or management of the Improvements or any part
thereof, and all right, title and interest of the Mortgagor therein and thereunder, including the
right upon the happening of any event of default hereunder to receive and collect any sums
payable to Mortgagor thereunder;

(g)     Mortgagor's interest in the franchises, permits, licenses and rights therein and
thereto respecting the use, occupation and operation of the Mortgaged Property and respecting
any business or activity conducted on the Premises, including, to the extent permitted by law, the
name or names, if any, now or hereafter used for the Improvements, and the good will associated
therewith;

(h)     Mortgagor's interest in and to the land lying in the bed of any street, road, avenue
or right-of-way in front of or adjoining the Land, and any and all easements, rights-of-way, gores
of land, estates, interests, hereditaments (corporeal and incorporeal), streets, ways, alleys,
passages, sewer rights, water courses, water rights and powers, and all other rights, benefits,
privileges and appurtenances whatsoever, in any way belonging, relating or appertaining to any
of the property described in the preceding paragraphs (a) through (g), or which hereafter shall in
any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by
the Mortgagor;

(i)     any and all unearned premiums, accrued or to accrue under insurance policies
now or hereafter obtained by Mortgagor, all proceeds of such insurance (including title
insurance) policies, and all awards, including interest thereon, heretofore and hereafter made to
Mortgagor for taking by eminent domain of the whole or any part of the property described in
the preceding paragraphs (a) through (h), including any awards for change of grade of streets,
which said premiums, proceeds and awards are hereby assigned to Mortgagee, which is hereby

3

authorized to collect and receive the proceeds of such insurance policies and awards and to give proper receipts and acquittances therefor; and

(j)    any and all rents, income and other benefits to which Mortgagor may now or hereafter be entitled to from, and all proceeds of, the property described in the preceding paragraphs (a) through (i).

AND, without limiting any of the other provisions of this Mortgage, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in all of those portions of the Mortgaged Property which are or may be subject to the provisions of the Uniform Commercial Code of the State in which the Premises is located and of the State in which Mortgagor was organized, applicable to secured transactions, and this Mortgage shall constitute a security agreement and financing statement for purposes of the Uniform Commercial Code.

TO HAVE AND TO HOLD the Mortgaged Property and all parts thereof unto Mortgagee, its successors and assigns forever (but subject to defeasance upon the payment of all sums at any time secured by this Mortgage), and Mortgagor hereby binds itself and its successors and assigns to warrant and forever defend title to the Mortgaged Property, unto Mortgagee and its successors and assigns against any and every person whomsoever claiming the same or any part thereof.

AND, Mortgagor covenants for the benefit of the Mortgagee as follows:

1.    Certain Definitions.

For purposes of this Mortgage, the following terms shall have the following meanings:

(a)    "Additional Payment" shall mean all sums, other than Debt Service and Deposits, which may become payable by Mortgagor to Mortgagee under this Mortgage for any reason (whether or not specifically designated in this Mortgage as an Additional Payment), including but not limited to (i) any late payment charge, liquidated damages or interest charge which may be assessed under this Mortgage, (ii) any fees due to Mortgagee, or expenses of Mortgagee required to be paid by Mortgagor, under this Mortgage, (iii) any funds advanced by Mortgagee, a receiver, or any other person on Mortgagee's behalf to satisfy any obligation of Mortgagor under this Mortgage, (iv) any amount of damages, costs or expenses, including reasonable attorneys fees and disbursements, which Mortgagee may incur as a result of Mortgagor's failure to perform any of its obligations or pay any amount which it is required to pay under this Mortgage, and (v) any amount for which Mortgagee is entitled to receive indemnity from Mortgagor under this Mortgage. All Additional Payments shall be secured by this Mortgage.

(b)    "Banking Day" shall mean a day on which both state and federally chartered banks are open for business in New York City.

(c)    "Debt Service" shall mean all payments of interest or principal which may at any time be due under the Note or this Mortgage, including the principal balance at such time as it

4

NC CLERK

may be or become payable in full and the Fee Payment at such time or times as it may become payable.

(d) "Default Rate" shall mean a rate of interest equal to 24% per annum or, if less, the maximum legal rate at the time any such interest is to be calculated.

(e) "Deposits" shall mean all sums which Mortgagor may be required to deposit with Mortgagee for any reason under Paragraph 4.

(f) "Fee Payment" shall mean an amount determined as of any Fee Payment Date, as follows:

(i) if the Fee Payment Date is prior to October 1, 2009, 5% of the outstanding principal balance of this Mortgage;

(ii) if the Fee Payment Date is on or after October 1, 2009 and prior to October 1, 2010, 4% of the outstanding principal balance of this Mortgage;

(iii) if the Fee Payment Date is on or after October 1, 2010 and prior to October 1, 2011, 3% of the outstanding principal balance of this Mortgage;

(iv) if the Fee Payment Date is on or after October 1, 2011 and prior to October 1, 2012, 2% of the outstanding principal balance of this Mortgage; and

(v) if the Fee Payment Date is at any time on or after October 1, 2012 (including after the Maturity Date), 1% of the outstanding principal balance of this Mortgage.

Notwithstanding the foregoing provisions of this Section 1(f), the Fee Payment shall not be due at any time during the thirty (30) day period ending on the stated Maturity Date.

(g) "Fee Payment Date" shall mean any of the following: (i) the date on which the entire outstanding principal balance is, or is required to be, paid in full, whether at or after the scheduled maturity date, or on any earlier date by reason of a prepayment permitted under Paragraph 23 of this Mortgage; (ii) the date of any agreement to modify or extend this Mortgage which may be executed between Mortgagor and Mortgagee (provided that this shall not imply any right to such a modification or extension); and (iii) in the case of a payment of the principal balance of this Mortgage which results from Mortgagor's default and a subsequent acceleration of the maturity of this Mortgage (whether or not followed by foreclosure), the earlier of the date of payment or the date of the judgment in foreclosure.

(h) "Impositions" shall mean all taxes, assessments, water rates, water meter charges, sewer rents, charges for public utilities, excises, levies, license and permit fees and other governmental charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever (including any fines, penalties or interest due as a result of the deferred or late payment of any of the foregoing), which at any time during the term of this Mortgage may be assessed, levied, confirmed, imposed upon, or grow or become due and

payable out of or in respect of, or become a lien on, the Mortgaged Property or any part thereof or any appurtenance thereto, the rent and income received by Mortgagor from tenants, or for any use or occupation of the Mortgaged Property, and such franchises as may be appurtenant to the use of the Mortgaged Property, this transaction or any document to which Mortgagor is a party, creating or transferring an interest or estate in the Mortgaged Property or any part thereof.

(i)    "Insurance Premiums" shall mean all premiums and any other payments which may be due with respect to all policies of insurance which Mortgagor may be obligated to maintain under Paragraph 5.

(j)    "Junior Mortgage" shall mean any mortgage (including a purchase money mortgage) which is a lien on the Mortgaged Property or any part thereof at any time that this Mortgage is a lien on the Mortgaged Property or any part thereof, and which is junior in priority of lien to the lien of this Mortgage.

(k)    "Mortgagee" shall mean the Persons who at any time are the record owners of this Mortgage. The term "Mortgagee" shall not include any former owner of this Mortgage or an interest therein who is no longer a record owner thereof.

(l)    "Mortgagor" shall mean the Persons executing this Mortgage as mortgagor, and in the event of any Transfer, shall mean the Persons who at any time are the record owners of the Premises.

(m)    "Note" shall mean the promissory note which this Mortgage secures.

(n)    "Person" shall mean any individual, corporation, partnership, trust, estate or other form of entity or association.

(o)    Intentionally Omitted.

(p)    "Transfer" shall mean any of the following:

(i)    any sale, transfer, assignment (including an assignment of rents), lease, ground or master lease, mortgage (including purchase money mortgage), pledge or other encumbrance of any interest of Mortgagor in the Mortgaged Property, or of any interest of any other Person in the Mortgaged Property which is derived from Mortgagor;

(ii)    any sale, transfer, assignment, pledge or other encumbrance of any ownership interest (beneficial or otherwise) in the Mortgagor or any other Person who derives from Mortgagor an interest in the Mortgaged Property (other than by reason of death);

(iii)    the execution of any agreement, however named, or the occurrence of any event, which has the effect of transferring dominion and control of the Mortgaged Property or any part thereof to any Person other than Mortgagor, or which has the effect of transferring control of any ownership interest (beneficial or otherwise) in Mortgagor or any other person who derives from Mortgagor an interest in the Mortgaged Property.

The rental of individual apartment units or stores to separate tenants in the ordinary course of operating the Premises as a rental property shall not be deemed a Transfer. For purposes of this section, "control" shall mean possession of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting equity interests, by contract or otherwise (such definition to have the same meaning as such definition has in Regulation Section 230.405 under the Securities Act of 1933).

(q)     "Transfer Closing" shall mean the event on a Transfer Date as a result of which a Transfer occurs.

(r)     "Transfer Date" shall mean the effective date of any Transfer. For this purpose, the effective date of a Transfer shall be the earliest of the date of closing, the date of delivery of any document which conveys an interest in the Mortgaged Property or Mortgagor, or the date on which dominion or control of the Mortgaged Property or part thereof, or control of an interest in Mortgagor, passes to the transferee.

(s)     "Transfer Taxes" shall mean any and all federal, state and local taxes now or hereafter imposed on any Transfer, or which may be imposed on any other transfer of any interest in the Mortgaged Property (other than a transfer by Mortgagee of this Mortgage) which may be excluded from the definition of Transfer, or imposed on any gain resulting from any Transfer or such other transfer, or imposed by reason of the making or recording of this Mortgage or the Note or any modification, extension or termination of this Mortgage, or imposed in connection with any foreclosure of the Mortgaged Property by Mortgagee, but shall not include any regular federal, state or local income taxes imposed on Mortgagee's income generally. Transfer Taxes shall include, but shall not be limited to, the New York City Real Property Transfer Tax and the New York State Real Estate Transfer Tax.

2.     Payment of Indebtedness.

(a)     The Mortgagor covenants and agrees to pay the indebtedness evidenced by and as provided in the Note and this Mortgage. See Schedule B annexed hereto and made a part hereof for the specific payment terms of such indebtedness.

(b)     Except as otherwise specifically provided in this Mortgage, all payments shall be made by Mortgagor to Mortgagee by good unendorsed check drawn in U.S. dollars on a New York banking institution which is a member of the New York Clearing House, and received by Mortgagee at its offices at or before 1:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27.

3.     Payment of Impositions, Insurance Premiums, Transfer Taxes.

(a)     It shall be the obligation of Mortgagor to pay all Impositions and Insurance Premiums when due. Notwithstanding that by law any Imposition may at the option of the taxpayer be paid in installments, then except if and to the extent that Mortgagor is making

7

NC
CLE...

Deposits under Paragraph 4 specifically allocated for such Imposition, the same shall not be paid in installments, but shall be paid by Mortgagor in full in one lump sum on the date such Imposition first becomes payable. All such payments of Impositions and Insurance Premiums shall be paid by Mortgagor by check, and Mortgagor shall obtain a receipt for payment. Mortgagor shall furnish to Mortgagee, within 10 days upon request, a copy of the bill for the Imposition or Insurance Premium, the check, and the receipt for payment. Mortgagor shall be deemed to have made payment of any item of Impositions or Insurance Premiums if Mortgagor (i) has made a Deposit under Paragraph 4 specifically allocated for such item of Impositions or Insurance Premiums, (ii) has delivered to Mortgagee a copy of the bill for such item of Impositions or Insurance Premiums no less than thirty (30) days' prior to the due date of any such Imposition or Insurance Premiums, as the case may be, (iii) has timely made all Deposits for any purpose which may be required or demanded by Mortgagee under Paragraph 4 and (iv) no event of default under this Mortgage has occurred and is continuing beyond any cure period provided in this Mortgage for such event of default. It shall be the express obligation of Mortgagor to obtain bills for all Impositions and Insurance Premiums from the appropriate taxing authorities or insurance broker or company, as the case may be, and forward copies of such bills to Mortgagee no less than thirty (30) days' prior to the due date of any such Imposition or Insurance Premium. In the event Mortgagor pays directly any item of Imposition or Insurance Premiums, and Mortgagee makes payment of the same item from Deposits, it shall be Mortgagor's obligation to apply for any refund which may be due, and Mortgagee shall not have any obligation to apply for such refund or have any liability with respect to the double payment

(b)      It shall be the obligation of Mortgagor to pay all Transfer Taxes when due. Notwithstanding that by law any Transfer Tax may at the option of the taxpayer be paid in installments, the same shall not be paid in installments, but shall be paid by Mortgagor in full in one lump sum on the date such Transfer Tax first becomes payable. All such Transfer Taxes shall be paid by Mortgagor by unendorsed certified check of Mortgagor or unendorsed bank check, drawn in U.S. dollars on a New York bank which is a member of the New York Clearing House, made payable directly to the taxing authority, title company, or Mortgagee, as Mortgagee shall direct. If at any time notice is given by any taxing authority having jurisdiction that any additional mortgage tax is due on this Mortgage by reason of any Additional Payments which may become due and be secured by this Mortgage, Mortgagor shall pay such additional mortgage tax by not later than the date specified for payment in the notice from the taxing authority, or if no such date is specified, within 10 days after the date of such notice. If Mortgagor fails to pay such additional mortgage tax by such date, then Mortgagee at its option may pay any such additional mortgage tax, interest and penalties (even if a foreclosure, bankruptcy or insolvency proceeding shall have been commenced), and the amount so paid by Mortgagee shall become immediately due and payable to Mortgagee as an Additional Payment, shall be secured by this Mortgage, and shall be recoverable as part of the indebtedness secured by this Mortgage in any foreclosure, bankruptcy or insolvency proceeding.

(c)      Mortgagor shall have the right to contest the amount or validity, in whole or in part, of any Imposition by appropriate proceeding diligently conducted in good faith, but only after Mortgagor has either paid such Imposition in full, or made a Deposit under Paragraph 4 specifically allocated for such Imposition, and only if Mortgagor has timely made all Deposits for any purpose which may be required or demanded by Mortgagee under Paragraph 4.

8

Mortgagee shall be entitled to apply Deposits to the payment of such Imposition when due even though Mortgagor may be contesting such Imposition.

4.    Deposits for Impositions, Insurance Premiums, Etc.

(a)    In order to more fully protect the security of this Mortgage, to insure the payment of Impositions and Insurance Premiums, and as further security for the indebtedness and other obligations secured hereby, Mortgagor shall deposit funds with Mortgagee as follows:

(i)    Mortgagor shall deposit with Mortgagee, on the first day of each and every calendar month during the term of this Mortgage, an amount, calculated as provided in this paragraph, for the payment of Impositions and Insurance Premiums. The amount of the deposit due on the first day of any calendar month shall be one twelfth of 110% of the amount of the total payments for Impositions and Insurance Premiums which shall be due at any time during the twelve month period which begins on the first day of the following month (the "Deposit Calculation Period"). For purposes of computing the deposit, "total payments for Impositions and Insurance Premiums" as used in the preceding sentence, shall mean for each item of Impositions or Insurance Premiums, the amount estimated by Mortgagee to be necessary to pay each such item which becomes due during the Deposit Calculation Period. There shall be included in the amount due in any Deposit Calculation Period any increases in or supplemental payments of Impositions or Insurance Premiums made with respect to any previous year. It is the intention of Mortgagor and Mortgagee that on a date one month prior to the due date of any Imposition or Insurance Premium, Mortgagee shall have on hand Deposits specifically allocated to such item in an amount equal to 110% of the amount of such item due on the due date thereof. The amount of the deposit which would be due on the first day of the calendar month following the date of this Mortgage shall be due instead on the date of this Mortgage.

(ii)    If at any time Mortgagee shall not have Deposits on hand equal to the amounts computed in accordance with subparagraph (i) above (based on Mortgagee's latest estimate of the total payments for Impositions and Insurance Premiums due during a Deposit Calculation Period), Mortgagor shall deposit additional funds, within ten days after demand, in order to bring the Deposits on hand up to the amount as so computed.

(iii)    In the event Mortgagor maintains any insurance required under this Mortgage under a blanket policy, then if Mortgagor submits to Mortgagee proof reasonably satisfactory to Mortgagee that Mortgagor has paid, under such blanket policy, the Insurance Premiums for the insurance provided by such blanket policy, and if Mortgagor has made all Deposits for any purpose which may be required or demanded by Mortgagee hereunder and is not overdue (without regard to cure periods) in the payment of any Debt Service or Additional Payments due under this Mortgage, then Mortgagee shall refund to Mortgagor the amount of Deposits made with respect to the Insurance Premiums which Mortgagor has so paid under such blanket policy.

(iv)    Mortgagor shall pay to Mortgagee a sum equal to $15 for each check paid from the Deposits held by Mortgagee hereunder and $50.00 for each bank or certified check paid from the Deposits held by Mortgagee hereunder. Mortgagee shall deduct such amount from the

9

Deposits.

(b) Mortgagee, at its option, and without notice to Mortgagor, may use the Deposits for one item of Impositions or Insurance Premiums for the payment of another, or for the payment of any amount of Debt Service which is not paid within any applicable grace period after the due date, or for the payment of any Additional Payments which are not paid on the date when due (without regard to grace periods), or for the payment of any Transfer Taxes or other amounts which Mortgagor may be required to pay to any party other than Mortgagee and which is not paid on the date when due. It is the intention of Mortgagee and Mortgagor that Mortgagee have the broadest possible power in applying Deposits, and the language of this Paragraph 4 should be interpreted as broadly as possible to permit any application of Deposits which Mortgagee may seek to make. Mortgagor grants to Mortgagee a security interest in Deposits as additional security for the obligations secured by this Mortgage, provided that such security interest shall not prevent the application of Deposits by Mortgagee in accordance with this Paragraph 4.

(c) Deposits shall bear no interest. Mortgagee shall be entitled to make payment from Deposits of any Imposition for a fiscal year of the taxing authority in one lump sum, even if such payment would thereby be made prior to the date when due. Mortgagee shall not be liable or accountable for any Deposits paid over to the appropriate taxing authority, insurance company or broker, as the case may be.

(d) Upon an assignment of this Mortgage by any Mortgagee, such Mortgagee shall have the right to pay over the balance of Deposits in its possession to the assignee, and in the event Mortgagee does so pay over such balance, such Mortgagee shall thereupon be completely released from all liability with respect to Deposits and Mortgagor shall look solely to the assignee or transferee in reference thereto. This provision shall apply to each and every transfer of such Deposits to a new assignee.

5. Insurance.

(a) Mortgagor shall, for the benefit of Mortgagee, keep the Improvements and Equipment insured under an allrisk policy, and such other hazards as Mortgagee in its reasonable discretion may notify Mortgagor to provide, and shall also provide such comprehensive general liability insurance, loss of rent insurance, boiler and machinery insurance, workers compensation insurance, disability insurance and other kinds of insurance, as Mortgagee in its reasonable discretion may notify Mortgagor to provide. All amounts and scope of coverage of all such policies, and the insurers with whom such policies are carried, shall be such as Mortgagee may specify in its reasonable discretion, and shall be increased by Mortgagor at such times and to such amounts and scope as Mortgagee may specify in its reasonable discretion.

(b) In the event of loss or claim of liability, Mortgagor will give immediate notice thereof to Mortgagee. Mortgagor shall obtain the written consent of Mortgagee, which consent shall not be unreasonably withheld or delayed, to the adjustment with insurance carriers of all losses or liability of any kind. The selection of the insurance adjuster shall be made by Mortgagor subject to the approval of Mortgagee, which shall not be unreasonably withheld or

10

delayed. Notwithstanding anything herein contained to the contrary, Mortgagee may, but shall not be required to, make proof of loss to the insurance carrier. Mortgagor hereby appoints Mortgagee, irrevocably, as Mortgagor's attorney-in-fact, to endorse any draft for any payment under any insurance policy which is made payable to Mortgagor or to Mortgagor and Mortgagee jointly.

(c)    The following requirements shall apply to the policies of insurance which Mortgagor is required to provide pursuant to Paragraph 5(a):

(i)    the aggregate deductible applicable to property insured thereunder shall not be in excess of $10,000.00, and there shall be no deductible applicable to any other type of loss or liability insured thereunder;

(ii)    all policies applicable to property shall provide for 100% replacement cost coverage without offset for depreciation;

(iii)    all property and rental value insurance shall be provided in an amount sufficient to prevent coinsurance;

(iv)    except for workers' compensation insurance, all policies shall name Mortgagor and Mortgagee as insured as their respective interests may appear;

(v)    except for workers' compensation and public liability insurance, all policies shall contain a standard New York form of noncontributory mortgagee clause and lender's loss payable endorsement in favor of Mortgagee;

(vi)    each policy of insurance shall include effective waivers by the insurer of all claims for insurance premiums against Mortgagee;

(vii)    each policy of insurance shall provide that any loss shall be payable to Mortgagee notwithstanding (A) any act, failure to act or negligence of, or violation of any warranty, declaration or condition contained in any such policy by, any named insured, (B) the occupation or use of the Mortgaged Property for purposes more hazardous than permitted by the terms of such policy, (C) any foreclosure or other action or proceeding taken by Mortgagee or any other holder of a mortgage on the Mortgaged Property pursuant to any provision of the Mortgage or such other mortgage, or (D) any change in title to or ownership of the Mortgaged Property or any portion thereof;

(viii)    each policy of insurance shall provide an endorsement that 30 days advance written notice of any cancellation, expiration, non-renewal or material change affecting the interest of Mortgagee shall be sent to Mortgagee in the manner provided in this Mortgage for notices;

(ix)    no policy of insurance of any kind shall provide for installment payments more frequently than annually;

11

(x)     each insurance company issuing any such policy of insurance shall (A) be organized and existing under the laws of one of the states of the United States and shall be licensed to do business as an insurance company, and authorized to issue the type of insurance policy it is issuing with respect to the Mortgaged Property, in the State of New York, (B) have a Best's rating of at least A-, VIII, and (C) be satisfactory to Mortgagee in its reasonable discretion;

(xi)     where any insurance is provided under a blanket policy, the policy shall contain an endorsement specifying the amount of the total coverage of such policy that is allocated to the Mortgaged Property and which will be payable notwithstanding the amount of any losses with respect to any other properties which may be covered under such blanket policy; and

(xii)     each policy of insurance shall be satisfactory in all other respects to Mortgagee in its reasonable discretion.

(d)     Mortgagor shall deliver to Mortgagee on the date of execution of this Mortgage Evidence of Insurance (Acord Form 27) for the insurance coverage to be provided by all policies of insurance called for pursuant to this Paragraph 5 other than general public liability insurance, and Certificate of Insurance (Acord Form 25s) for all general public liability insurance. All of the actual policies (or certified copies where coverage is provided by a blanket insurance policy) shall be delivered to Mortgagee within thirty days following the commencement of the term of this Mortgage. Mortgagor shall furnish to Mortgagee, no less than thirty days prior to the expiration of any insurance policy, Evidence of Insurance (Acord Form 27) and Certificate of Insurance (Acord Form 25s), in form satisfactory to Mortgagee, extending such insurance or providing new insurance to replace the same, and shall deliver the new insurance policy (or certified copies where coverage is provided by a blanket insurance policy) to Mortgagee within thirty days after the expiration of the old policy. Mortgagor shall pay to Mortgagee, immediately upon demand, a service fee of $100 each time that Mortgagee receives a notice of cancellation and/or notice of non-renewal of any insurance policy. Mortgagee, at its election, may deduct this charge from the Deposits.

6.     Damage or Destruction; Application of Insurance Proceeds.

(a)     If the Improvements or Equipment on the date of this Mortgage or thereafter erected or acquired shall be damaged or destroyed in whole or in part by any cause, Mortgagor shall give to Mortgagee immediate notice thereof, and Mortgagor, at its own cost and expense, whether or not insurance proceeds, if any, shall be sufficient or shall be made available for the purpose, shall promptly repair, replace and rebuild the same, as nearly as possible to the character and quality of the Improvements and the Equipment therein existing immediately prior to such occurrence. Mortgagee shall in no event be called upon to repair, replace or rebuild any such Improvements or Equipment, nor to pay any of the costs or expenses thereof. The work of repairing, replacing or rebuilding (which shall be deemed to include the preparation of plans where necessary) such damaged or destroyed Improvements or Equipment shall be commenced as soon as reasonably possible but in any event within 90 days from the date of any such damage or destruction, and after commencement thereof shall be expeditiously proceeded with to

12

completion, provided that if the work of repairing, replacing or rebuilding cannot, in the exercise of diligence, be feasibly commenced within 90 days, then Mortgagor's time to commence such work shall be extended for such period of time as is reasonable and appropriate and during which Mortgagor is proceeding diligently and expeditiously. In the event any damage or destruction results in a condition dangerous to persons or property, or which is causing continued damage to the Premises or Equipment or any part thereof, the work of repairing, replacing or rebuilding shall be commenced promptly so as to remove such dangerous or damaging condition. The quality of the repairs, replacement or rebuilding shall be subject to Mortgagee's review and approval, and Mortgagor shall be deemed not to have completed the repairs, replacement or rebuilding as required by this paragraph, if Mortgagee shall have reasonably disapproved the quality thereof.

(b)  (i)  In the event insurance proceeds received under any insurance policy required to be maintained by Mortgagor are less than 10% of the outstanding balance of the mortgage at the time such proceeds are received from the insurance company, such proceeds shall be made available by Mortgagee for application to the cost of repair, replacement or rebuilding, in accordance with the provisions of Paragraph 6(c) below. In the event the amount of such insurance proceeds is 10% of the outstanding balance of the mortgage at the time such proceeds are received from the insurance company or greater but less than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, Mortgagee may, at its option and in its absolute discretion, apply all amounts recovered under any insurance policy required to be maintained by Mortgagor in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of such balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of repair, replacement or rebuilding, in accordance with the provisions of Paragraph 6(c) below. However, in the event Mortgagor has not commenced the work of repairing, replacing or rebuilding within the time required under Paragraph 6(a), or in the event such work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 6(b)(i) to make insurance proceeds available to Mortgagor for application to the cost of repair, replacement or rebuilding, Mortgagee at its option may elect to apply insurance proceeds instead in reduction of the outstanding principal balance of the Note, and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)  In the event the amount of such insurance proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding the provisions of Subdivision 4 of Section 254 of the New York Real Property Law, such proceeds shall be applied in reduction of the outstanding principal balance of the Note, and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

NC CLERK

(c) In the event Mortgagee elects or is required pursuant to Paragraph 6(b) to make available insurance proceeds received and held by Mortgagee under insurance policies, for the purpose of paying towards the cost of repairs, replacement or rebuilding which Mortgagor is required to perform pursuant to Paragraph 6(a), such insurance proceeds shall be made available only in accordance with the following provisions:

(i) Net insurance proceeds (which shall mean net of all "Mortgagee's expenses" (as hereinafter defined)), shall be made available for payment to the parties whom Mortgagor may employ to perform the necessary repairs, replacement or rebuilding, as such repairs, replacement or rebuilding shall progress, or to Mortgagor as Mortgagor shall pay for such repairs, replacement or rebuilding, upon the presentation to Mortgagee of a certificate of the architect in charge of such work (or if an architect is not required, the contractor in charge of such work) certifying to the satisfactory completion of the work. Such certificate shall be accompanied (as a condition to payment) by invoices for the work from the contractor (if payment is to be made directly to the contractor), or a paid receipted invoice for the work (if payment is to be made to the Mortgagor), together with copies of paid receipted invoices not previously provided to Mortgagee with respect to any prior work for which Mortgagee shall have advanced payment from net insurance proceeds.

(ii) The disbursement of such net insurance proceeds received by Mortgagee shall be made under a schedule of payments to be prepared by Mortgagor and approved by Mortgagee, subject to the provisions of clause (vi) below in the event insurance proceeds held by Mortgagee at any time are insufficient. However, Mortgagee may withhold from each amount so to be paid by Mortgagee 10% thereof until the work of repairing, replacing or rebuilding shall have been completed, and reasonable proof shall have been furnished to Mortgagee that no lien or liability has attached or may attach to the Mortgaged Property or any part thereof or to Mortgagee in connection with such repairs, replacement or rebuilding.

(iii) Mortgagor shall furnish to Mortgagee a list of the name, address and telephone number of each contractor and subcontractor who may perform any work, or furnish any materials or services, in connection with the repairs, replacement or rebuilding, and shall update such list promptly after any change in the information contained therein.

(iv) As used herein, "Mortgagee's expenses" shall mean all reasonable costs, expenses (including fees and other charges provided under this Mortgage) and reasonable attorneys fees and disbursements incurred by Mortgagee in the adjustment, collection or disbursement of the insurance proceeds, or in any way arising out of the repairs, replacement or rebuilding. Mortgagee may, at any time and from time to time in its reasonable discretion, have an inspection made of the Premises by its representative as such repair, replacement and rebuilding progresses, and Mortgagor shall pay to Mortgagee a fee of $750.00 for each such inspection, such fee to be deemed part of "Mortgagee's expenses".

(v) If in the course of such work any mechanic's or other lien or order for the payment of money shall be filed against the Mortgaged Property or any part thereof or against Mortgagee or Mortgagor, or if there shall be any overdue payment (without regard to cure

14

periods) of any Debt Service, Additional Payment or Deposits due under this Mortgage, Mortgagee shall not be obligated to make any payment of such insurance proceeds until and unless such lien or order shall have been fully bonded, satisfied, canceled or discharged of record, and until such overdue payment of Debt Service, Additional Payment or Deposits shall have been paid.

(vi)    If the amount of such net insurance proceeds received and held by Mortgagee, shall be insufficient at any time (whether at the commencement of the work or at any time during the work), as Mortgagee shall determine in its sole discretion, for the proper and effective repair, replacement or rebuilding of such damaged or destroyed Improvements or Equipment in accordance with Paragraph 6(a), then Mortgagor shall pay all additional sums required for such repair, replacement or rebuilding, and no disbursements of net insurance proceeds held by Mortgagee shall be made until the remaining total undisbursed net insurance proceeds held by Mortgagee is at least equal to the estimated remaining unpaid cost of such repair, replacement or rebuilding. If the amount of such net insurance proceeds held by Mortgagee shall be in excess of the portion of the cost of such repairs, replacement and rebuilding required to be paid from such proceeds as provided in this Paragraph 6(c), the excess shall be paid to and retained by Mortgagee in reduction of the outstanding principal of this Mortgage.

(vii)   An architect shall be required for all such repairs, replacement or rebuilding, except with respect to damage of less than $50,000 which does not involve any structural work, and such architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of such architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

7.    Condemnation.

(a)    If any portion of the Premises shall be taken or condemned by any competent authority by the exercise of any right of eminent domain or in condemnation proceedings, or if the grade of any street upon which the Premises abut shall be changed by governmental action, the entire award or the aggregate of any separate awards shall be paid to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest and all Additional Payments which may be due under this Mortgage. Mortgagor shall have no right, title, interest, claim or demand whatsoever of, in or to any portion of such award which is due to Mortgagee as provided in the preceding sentence. Mortgagor hereby assigns to Mortgagee, as collateral security and subject to subparagraphs (c) and (d) below, all of its right, title and interest in and to any such award or awards to the extent of such amount due to Mortgagee.

(b)    In the case of a taking or condemnation of the whole or materially all of the Premises, Mortgagor shall continue to pay Debt Service, Additional Payments and Deposits hereunder until title shall vest and thereafter until the award is paid in connection with such taking or condemnation. In the case of a taking or condemnation of only a portion of the Premises, or if there is a change of grade of a street, there shall be no reduction or change of Additional Payments, Deposits, or the rate of Debt Service.

15

NC
CLERK

(c)    (i)    In the event proceeds paid to Mortgagee pursuant to Paragraph 7(a) are less than $20,000, such proceeds shall be made available by Mortgagee for application to the cost of restoration and repair, in accordance with the provisions of Paragraph 7(d) below. In the event the amount of such proceeds is $20,000 or greater but less than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, Mortgagee may, at its option and in its absolute discretion, apply proceeds paid to it pursuant to Paragraph 7(a) in any one or more of the following ways: (A) in reduction of the outstanding principal balance of the Note, regardless of whether part or all of such balance shall then be matured or not; (B) in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, or to fulfill any of the covenants of Mortgagor provided herein; or (C) to be released to Mortgagor for application to the cost of restoration or repair, in accordance with the provisions of Paragraph 7(d) below. However, in the event Mortgagor has not commenced the work of restoration and repair within the time required under Paragraph 6(a), or in the event such work is not prosecuted diligently and expeditiously to completion, as Mortgagee shall determine in its sole discretion, then notwithstanding that Mortgagee otherwise may be required or have elected under the provisions of this Paragraph 7(c)(i) to make proceeds available to Mortgagor for application to the cost of restoration and repair, Mortgagee at its option may elect to apply such proceeds instead in reduction of the outstanding principal balance of the Note, and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and may elect to declare the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage to be immediately due and payable.

(ii)    In the event the amount of such proceeds is equal to or greater than 75% of the outstanding principal balance of the Note on the date such proceeds are received by Mortgagee, then notwithstanding any provision of applicable law, such proceeds shall be applied in reduction of the outstanding principal balance of the Note, and in payment of any other monetary obligation of Mortgagor under this Mortgage or the Note, and the entire remaining principal balance of the Note and all other amounts due under the Note and Mortgage shall be immediately due and payable without notice.

(d)    If a partial taking or condemnation results in damage to any of the Improvements, Mortgagor shall restore and repair the damage to the Improvements. If the portion of the award payable to Mortgagor, if any (after Mortgagee has received the portion to which it is entitled pursuant to subparagraph (a)), is insufficient to restore and repair such damage, then such portion of the award which is paid to Mortgagee and which Mortgagee elects or is required pursuant to Paragraph 7 (c) to make available for such restoration or repair, shall be made available in the same manner, and under the same terms and conditions, as insurance proceeds may be made available for repairs, replacement or rebuilding pursuant to the provisions of Paragraph 6(c). All such restoration and repair work shall be done within the time periods, and shall be of the quality subject to Mortgagee's approval, provided for repair, replacement or rebuilding pursuant to Paragraph 6(a).

(e)    In case of any governmental action, not resulting in the taking or condemnation of any portion of the Premises but creating a right to compensation therefor, such compensation

16

shall be payable to Mortgagee to the extent of an amount equal to all outstanding principal under this Mortgage, all accrued and unpaid interest, and all Additional Payments which may be due under this Mortgage, such amounts to be applied by Mortgagee in payment of such principal, interest and Additional Payments.

(f)    For purposes of this Paragraph 7, a taking of "materially all" of the Premises, as distinguished from a taking of a "portion" of the Premises, shall mean a taking of such scope that the portion of the Premises not so taken is insufficient to permit Improvements on the Premises not so taken to be restored and repaired so as to constitute a complete tenantable, rentable building.

8.    Maintenance and Repair.

(a)    Mortgagor, at its sole cost and expense, will take good care of the Premises, will keep the same in good order and condition, and make all necessary maintenance and repairs thereto, interior and exterior, structural and nonstructural, ordinary and extraordinary, and unforeseen and foreseen (including any repairs required as a result of any casualty loss). When used in this Paragraph 8, the terms "repairs" and "maintenance" shall include all necessary replacements, renewals, alterations, additions and betterments, and all such repairs and maintenance shall be completed with first class materials and workmanship, and be of a quality appropriate to the Premises and other comparable buildings in the immediate vicinity, and in all events shall be at least equal in quality and class to the original work. Mortgagor will do or cause others to do all necessary shoring of foundations and walls of the Improvements and every other act or thing for the safety and preservation thereof which may be necessary by reason of any excavation or other building operations upon any adjoining property or street, alley or passageway. Mortgagor shall also make all necessary repairs and restorations, and maintain in good and clean condition, the sidewalks, curbs and vaults on or adjoining the Premises.

(b)    Mortgagor shall promptly do any maintenance or repair to the Premises, reasonably necessary to maintain the Premises in accordance with the standards set forth in subparagraph (a) above, which Mortgagee may request. All maintenance and repair work to be performed by Mortgagor hereunder shall be commenced by Mortgagor promptly after notice from Mortgagee, and shall be pursued diligently to completion, but in all cases shall be completed within 3 months after such notice or such longer period to which Mortgagee may consent, such consent not to be unreasonably withheld if the extension is reasonably necessary to complete the maintenance and repair work.

(c)    An architect shall be required for all maintenance and repair work which costs $50,000 or more, or which involves structural work, and such architect shall certify to the proper completion thereof in compliance with applicable codes and regulations. The selection of such architect shall be subject to the prior written approval of Mortgagee, not to be unreasonably withheld or delayed.

9.    Compliance with Laws, Ordinances; Environmental Matters.

(a)    Mortgagor, at its sole cost and expense, will promptly comply with all present and

NC CLERK

future laws, ordinances, orders, rules, regulations and requirements of all governments and federal, state and municipal agencies, all covenants, restrictions, easements and other matters affecting title, and all present or future orders, rules and regulations of the National Board of Fire Underwriters or any other body exercising similar functions, foreseen or unforeseen, ordinary as well as extraordinary, which now or hereafter may be applicable to the Mortgaged Property or any part thereof and the sidewalks, curbs and vaults, if any, on or adjoining the Premises, or which may be applicable to the use or manner of use of the Mortgaged Property or any part thereof, or to the owners, tenants or occupants thereof, whether or not such law, ordinance, rule, regulation or requirement shall necessitate structural changes or improvements or interfere with the use and enjoyment of the Mortgaged Property. Mortgagor shall at all times have a proper, current certificate of operation for the heating system, and any garbage disposal, compactor or incinerator, on the Premises, and shall have a proper up to date certificate of occupancy for the Improvements (if required by law). Mortgagor shall likewise observe and comply with the requirements of all policies of insurance at any time in force with respect to the Mortgaged Property. Mortgagor shall obtain any and all permits which may be required with respect to any construction, repair or other work on the Premises, prior to the commencement of such work, and copies of all such permits shall be submitted to Mortgagee promptly upon receipt by Mortgagor.

(b)    Mortgagee may at its option, and at Mortgagor's expense, not more than once each year, procure through a service agency tax, water, sewer rental charges, assessment, and/or state, county or municipal departmental searches (including fire, air resources, housing and building maintenance, highway and any and all other departments having jurisdiction) on the Premises. Mortgagor hereby grants to Mortgagee authority to act in its name, and for this purpose appoints Mortgagee, or any person so authorized by Mortgagee, as its attorney in fact (which power of attorney is coupled with an interest and is irrevocable and shall, to the extent permitted by law, survive any death, dissolution or legal incapacity of Mortgagor), for the purpose of accessing records of any federal, state or municipal government or agency relating to the Mortgaged Property. Mortgagor further agrees that, within ten days after request by Mortgagee, Mortgagor will execute such written authorization as Mortgagee may request for the purpose of permitting Mortgagee to access any such records.

(c)    No Improvement shall be altered, removed, or demolished without the prior written consent of the Mortgagee, which consent Mortgagee may withhold in its absolute discretion, or may give upon such conditions as Mortgagee may impose in its absolute discretion. Notwithstanding the foregoing, Mortgagor may make nonstructural alterations to the Premises that would not tend to decrease the value of the Mortgaged Property. All alterations permitted under this subparagraph (c) or under any other provision of this Mortgage shall be performed in a first class workmanlike manner using first class materials, and otherwise of a quality appropriate to the Premises and other comparable buildings in the immediate vicinity, and in all events, at least equal in quality and class to the original work.

(d)    All lease securities (if any) of tenants of the Premises shall be treated as trust funds not to be commingled with any other funds of the Mortgagor and all such lease securities, and interest, if any, earned thereon, shall at all times be maintained, deposited and disposed of strictly in accordance with applicable legal requirements. Mortgagor shall on demand, but not more than twice in any calendar year, furnish to Mortgagee satisfactory evidence of compliance

18

with this provision together with a verified statement of all lease securities deposited by the tenants and copies of all leases in its possession or control (provided that if Mortgagor is a cooperative corporation, it shall obtain and furnish to Mortgagee copies of all proprietary leases, even if not in its possession at the time requested).

(e)     Without limiting the generality of any of the foregoing provisions of this Paragraph 9, Mortgagor, at its sole cost and expense, will prepare and file by the applicable due date all reports or forms which now or at any time in the future may be required to be prepared and/or filed with any federal, state or municipal government or agency, including without limitation the annual RPIE and DHCR filings for the Mortgaged Property, and it shall be an event of default under this Mortgage in the event it fails to prepare and file with the appropriate governmental agencies any such reports or forms on or before the date due. Mortgagor, at its sole cost and expense, shall furnish to Mortgagee a copy of the annual RPIE and DHCR filings promptly upon making such filing, as well as any other reports or forms which Mortgagee may request, such copies to be date stamped or the receipt of which otherwise acknowledged by the agency with which such reports or forms are filed.

(f)     (i)     As used in this subparagraph (f), "Hazardous Substances" shall mean and include those elements or compounds which are contained in the list of hazardous substances adopted from time to time by the United States Environmental Protection Agency ("EPA") or by the New York Department of Environmental Conservation ("DEC"), or which are on any list of toxic or polluting materials designated by Congress, the EPA or DEC, or which are defined as hazardous, toxic, pollutant, infectious or radioactive by any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning, any hazardous, toxic, polluting, infectious, radioactive or other dangerous waste, substance or material, as now or at any time hereafter in effect (the "Hazardous Substance Laws").

(ii)     Mortgagor covenants and agrees that (A) Mortgagor shall comply with, and insure compliance by all other parties with, all applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property, and Mortgagor shall keep the Mortgaged Property free and clear of any liens imposed pursuant to any applicable Hazardous Substance Laws, all at Mortgagor's sole cost and expense; and (B) Mortgagor will at all time obtain and/or maintain all licenses, permits and/or other governmental or regulatory authorizations and approvals necessary to comply with applicable Hazardous Substance Laws relating to or affecting the Mortgaged Property or Mortgagor's use of the Mortgaged Property (the "Permits"), and Mortgagor will at all times be and remain in full compliance with the terms and provisions of the Permits.

(iii)     Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities (including strict liability), damages, injuries, expenses (including reasonable attorney's fees and disbursements), costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Mortgaged Property of any Hazardous

19

Substance including, without limitation, any losses, liabilities (including strict liability), damages, injuries, expenses (including attorneys fees and disbursements), costs of any settlement or judgment or claims, asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any so called federal, state or local "Superfund" or "Superlien" laws, and any statute law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance, whether or not caused by or within the control of Mortgagor.

(iv)    If Mortgagor receives any notice of (A) the happening of any event involving the use (other than any Hazardous Substances in customary quantities appropriate for an apartment building), spill, release, leak, seepage, discharge or cleanup of any Hazardous Substance on the Mortgaged Property or in connection with Mortgagor's operations thereon or (B) any complaint, order, citation or notice with regard to air emissions, water discharges, or any other environmental, health or safety matter affecting Mortgagor (an "Environmental Complaint") from any person or entity (including without limitation the EPA or DEC), then Mortgagor shall immediately notify Mortgagee in writing of said notice.

(v)    Mortgagee shall have the right but not the obligation, at its sole discretion, and without limitation of Mortgagee's rights under this Mortgage, to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable, including the appointment of a receiver of the Mortgaged Property, to cleanup, remove, resolve or minimize the impact of, or otherwise deal with any such Hazardous Substance or Environmental Complaint following receipt of any notice from any person or entity (including without limitation the EPA or DEC) asserting the existence of any Hazardous Substance or an Environmental Complaint pertaining to the Mortgaged Property or any part thereof which, if true, could result in an order, suit, lien or other action against Mortgagor and/or which, in the sole opinion of Mortgagee, could impair Mortgagee's security under this Mortgage. All costs and expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

(vi)    Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense (but not more frequently than once in any 18 month period), an environmental audit and/or an environmental risk assessment of the Premises. However, if an event of default shall have occurred and be continuing under this Mortgage, then Mortgagee shall have the right to require Mortgagor to perform at Mortgagor's expense, such environmental audits and/or environmental risk assessments, without limitation on frequency, as Mortgagee may request in its absolute discretion. Promptly upon receipt of the report of any such audit or assessment, Mortgagor shall perform such remediation and make such changes in its hazardous waste management practice at the Premises as may be recommended in such report. Such audit and/or risk assessment must be performed by an environmental consultant satisfactory to Mortgagee in its absolute discretion. If Mortgagor fails to perform any such environmental audit or risk assessment within thirty (30) days of Mortgagee's written request, Mortgagee shall have the right but not the obligation to retain an environmental consultant to perform any such environmental audit or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights, together with interest thereon at the Default Rate, shall be secured by this Mortgage and shall be payable to Mortgagee upon demand.

(vii)     Any breach of any warranty or representation or any breach of any
covenant contained in this subparagraph 9(f) shall be an event of default under this Mortgage,
and shall entitle Mortgagee, without any further notice or grace period, to exercise any and all
remedies provided for default in this Mortgage, or otherwise permitted by law.

(viii)    The provisions of this subparagraph 9(f) shall survive any foreclosure or
the enforcement hereof, and the provisions of clause (iii) of this subparagraph 9(f) shall survive
the payment of all amounts due under this Mortgage.

(g)     Mortgagor represents and warrants to Mortgagee as follows: (i) no portion of the
funds or proceeds which Mortgagor used to acquire the Mortgaged Property was obtained,
directly or indirectly, from an illegal transaction or activity; (ii) Mortgagor has not used and shall
not use or permit the Mortgaged Property or any portion thereof to be used for or in furtherance
of any illegal purpose or activity, including, without limitation, any purpose or activity which
would subject the Mortgaged Property (or any portion thereof) to the risk of seizure by or
forfeiture to any governmental entity pursuant to any federal, state or local law; (iii) to
Mortgagor's best knowledge, the funds or proceeds used by Mortgagor's immediate and remote
predecessors in title to acquire the Mortgaged Property were not obtained, directly or indirectly,
in whole or in part, from an illegal transaction or activity, and the Mortgaged Property has never
been used by any person in connection with or in furtherance of any illegal purpose, activity or
crime; and (iv) neither Mortgagor nor any disclosed or undisclosed principal of Mortgagor has
been investigated with respect to, indicted for or otherwise formally charged with, or convicted
of, any gambling offense, any violation of the federal narcotics laws, RICO or any crime which
may subject Mortgagor's property (including, without limitation, the Mortgaged Property) to the
risk of seizure by or forfeiture to any governmental entity pursuant to any federal, state or local
law.  Mortgagor shall deliver to Mortgagee immediately upon receipt, any notice, indictment,
order, judgment or other communication relating to any pending or threatened action or
proceeding in which Mortgagor's property or any part thereof (including, without limitation, the
Mortgaged Property) may be subject to the risk of forfeiture to any federal, state or local
government entity.  Each of the following shall be an event of default, entitling Mortgagee to
exercise all of its remedies for default without notice or cure period: (x) if any representation or
warranty set forth above shall be untrue when made or shall subsequently become untrue; (y) the
institution or threatened institution by a governmental entity (including the receipt of any notice
or other communication by Mortgagor or Mortgagee from a governmental entity) of any action
or proceeding seeking the forfeiture of the Mortgaged Property or any part thereof; and (z) the
indictment of or the filing of formal charges by a governmental entity against, or the conviction
of, Mortgagor or any disclosed or undisclosed principal of Mortgagor, or the admission by
Mortgagor or any disclosed or undisclosed principal of Mortgagor that it has engaged in any
crime or activity prohibited by any law which may subject the property of Mortgagor or such
principal to the risk of forfeiture or seizure, including, without limitation, gambling, narcotics
laws and RICO.

10.    Mortgagee's Right to Perform.

(a)     If Mortgagor shall at any time fail to pay any Imposition or Transfer Taxes in

21

accordance with the provisions hereof, or to take out, pay for, maintain or deliver as and when required under this Mortgage any of the insurance policies provided for herein, or shall fail to make any other payment or perform any other act on its part to be made or performed as and when required under this Mortgage, then Mortgagee, upon five days notice to Mortgagor (except in the case of an emergency creating a risk of immediate harm to persons or property, in which case without notice) and without waiving or releasing Mortgagor from any obligation of Mortgagor contained in this Mortgage, may (but shall be under no obligation to): (i) pay any Imposition or Transfer Taxes payable by Mortgagor pursuant to the provisions hereof; or (ii) take out, pay for and maintain any of the insurance policies provided for herein; or (iii) make any other payment or perform any other act on Mortgagor's part to be made or performed. Notwithstanding the foregoing, in the event Mortgagee receives any notice of cancellation of any insurance, or receives notice of amendment or modification of any insurance such that the insurance will not meet the requirements set forth in this Mortgage, Mortgagee may immediately without notice to Mortgagor take out, pay for and maintain policies of insurance which do meet the requirements set forth in this Mortgage. Mortgagee may enter upon the Premises for any such purpose and take all such action thereon as may be necessary therefor.

(b)     All sums so paid by Mortgagee and all costs and expenses (including attorney's fees and disbursements) incurred by Mortgagee in connection with the performance of any such act, together with interest thereon at the Default Rate from the respective dates of Mortgagee's making of each such payment or incurring each such cost and expense, shall constitute an Additional Payment immediately due and payable by Mortgagor to Mortgagee.

(c)     Mortgagee shall not be limited in the proof of any damages which Mortgagee may claim against Mortgagor arising out of or by reason of Mortgagor's failure to provide and keep in force insurance as aforesaid, to the amount of the Insurance Premiums not paid or incurred by Mortgagor and which would have been payable for such insurance, but Mortgagee shall also be entitled to recover as damages for such breach, the uninsured amount of any loss or liability (including all costs and expenses and attorneys fees and disbursements), to the extent of any deficiency in the insurance required by the provisions of this Mortgage, suffered or incurred by reason of damage to, or destruction of, or liability arising in connection with, the Mortgaged Property, occurring during any period when Mortgagor shall have failed or neglected to provide insurance as aforesaid.

(d)     Mortgagee shall have no liability, and Mortgagor waives any claim which it might be entitled to assert against Mortgagee, its employees, contractors and agents, with respect to any matter or thing resulting from any act which Mortgagee is entitled to take under this Paragraph 10, or resulting from any failure by Mortgagee to act (whether or not Mortgagee had knowledge of the condition or occurrence which required action to be taken).

11.     Liens.

If any mechanic's and/or materialmen's lien is filed against the Premises on or after the date of this Mortgage, or any other lien or encumbrance is filed against the Mortgaged Property or any part thereof for any reason after the date of this Mortgage, Mortgagor shall cause such lien or encumbrance to be discharged of record by payment, bonding or otherwise, within thirty (30)

22

days after Mortgagor is given notice thereof. Failure to so discharge of record any such lien or encumbrance within such thirty (30) day period shall be an event of default under this Mortgage, and shall entitle the Mortgagee, at Mortgagee's option and without further notice or cure period, to exercise any and all of the remedies of Mortgagee for default provided under this Mortgage or by law. In the event Mortgagor fails to so discharge of record such lien or encumbrance within such thirty (30) day period, Mortgagee may in addition, but shall not be obligated to, advance funds, bond or otherwise provide security necessary to discharge of record such lien or encumbrance, and all sums so advanced, together with interest thereon from the date of advance to the date of payment thereof at the Default Rate, shall be payable by Mortgagor to Mortgagee on demand as an Additional Payment. Any expenses incurred by Mortgagee in connection with the examination of title to the Mortgaged Property in order to ascertain the existence of any such lien or encumbrance and/or the discharge of record thereof, shall constitute advances made by Mortgagee under the provisions of this paragraph, which shall be payable by Mortgagor to Mortgagee on demand, together with interest as aforesaid, as an Additional Payment.

12.     Late Charges and Default Interest.

(a)     In the event the entire outstanding principal balance hereof, together with all accrued interest and any unpaid Additional Payments, are not paid in full and received by Mortgagee at its office at or before 1:00 P.M. on the maturity date (whether such date is the scheduled maturity date hereof, or any earlier date by reason of acceleration or notice of prepayment), the rate of interest due on the outstanding principal balance hereof shall be increased to the Default Rate from and after the date on which payment of the outstanding principal balance was due. Mortgagor and Mortgagee intend that in the event of a foreclosure proceeding or a bankruptcy, insolvency or similar proceeding following acceleration, notice of prepayment or scheduled maturity, the rate of interest which shall accrue and be payable (and be secured by this Mortgage) during the pendency of such proceeding and until this Mortgage is paid in full, shall be the Default Rate.

(b)     In the event any payment of Debt Service, Deposits or Additional Payments due under this Mortgage is not paid and received by Mortgagee at its office at or before 1:00 P.M. on the date which is five days after the due date (with no other grace period), a late charge of six cents (6¢) for each $1 so overdue shall become immediately due and payable to Mortgagee as liquidated damages for failure to make prompt payment, and such charge shall be due as an Additional Payment. In the event any such payment has not been paid and received by Mortgagee at its office at or before 1:00 P.M. on the 15th day of the month (with no grace period), an additional late charge of four cents (4¢), for each $1 overdue shall be payable.

(c)     In the event any check for any payment due under this Mortgage fails due collection, a charge of $300 shall become immediately due to Mortgagee to compensate Mortgagee for its administrative cost occasioned by such failure of collection.

(d)     In the event any document required to be delivered by Mortgagor to Mortgagee under any provision of this Mortgage is delivered more than 30 days later than the date when due, a late charge of $100 for each day late after such 30 day period, with respect to each document which is late, shall become immediately due to Mortgagee as liquidated damages.

NC CLERK

(e)     This Paragraph 12 shall not limit Mortgagee's remedy of foreclosure for Mortgagor's default or any other remedy of Mortgagee hereunder (other than actual damages for which a payment of liquidated damages in lieu thereof is provided in this Paragraph 12), and no other remedy which Mortgagee may have shall limit Mortgagor's obligation to pay the charges provided in this Paragraph 12.

13.     Right of Access and Entry; Inspections.

(a)     Mortgagor will permit Mortgagee and its authorized representatives to enter the Premises at all reasonable times for the purpose of (i) inspecting the same, (ii) showing the same to prospective purchasers, tenants, or mortgagees, and (iii) making any necessary repairs thereto and performing any work therein that may be necessary by reason of Mortgagor's failure to make any such repairs or perform any such work which may be required under this Mortgage. Nothing herein shall imply any duty upon the part of Mortgagee to do any such work, and performance thereof by Mortgagee shall not constitute a waiver of Mortgagor's default in failing to perform the same.

(b)     Mortgagor shall pay the cost of an annual inspection of the Premises by Mortgagee or its representative in the amount of $750.00. All inspections of the Premises by Mortgagee or its representatives shall be solely for the benefit of Mortgagee and shall create no obligation or responsibility whatsoever upon Mortgagee or its representatives to Mortgagor or any other party.

14.     Indemnity; Expenses.

(a)     Mortgagor will indemnify and save harmless Mortgagee against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including architects, attorneys, accountants, engineers and other professional fees and disbursements, which may be imposed upon or incurred by or asserted against Mortgagee by reason of any matter, occurrence or thing relating to Mortgagor or the Mortgaged Property. In case any action or proceeding is brought against Mortgagee by reason thereof, Mortgagor upon written notice from Mortgagee will at Mortgagor's reasonable expense resist or defend such action or proceeding by counsel selected by Mortgagee, and Mortgagor's failure to so defend shall be an event of default under this Mortgage. Mortgagee nonetheless shall be entitled to retain its own counsel and conduct its own defense, and all expenses thereof, including attorneys fees and disbursements, shall be paid by Mortgagor as an Additional Payment.

(b)     If Mortgagee employs an attorney or collection agent, or otherwise incurs any expense, (i) to collect all or any Debt Service, Additional Payments, or Deposits due to Mortgagee hereunder, or (ii) to enforce any other provision hereof, or (iii) to foreclose this Mortgage or enforce other remedies to which Mortgagee may be entitled, or (iv) to represent Mortgagee in any action or proceeding (including but not limited to any bankruptcy or insolvency proceeding or any foreclosure action initiated by any other person or entity) involving Mortgagor or the Mortgaged Property, in which action or proceeding Mortgagee is named as a party, or issues relating to the priority, enforceability or collectability of, or amounts secured by,

24

CLERK

this Mortgage are raised, or any seizure or claim of forfeiture is asserted by any federal, state or local government entity, or (v) in connection with any proposed Transfer or any other matter for which Mortgagor may request Mortgagee's consent or other action by Mortgagee; then in any of such events the Mortgagee, in addition to all other costs and fees allowed according to law, shall be reimbursed by Mortgagor immediately for all costs, attorneys fees and disbursements, and collection agent charges incurred by Mortgagee, the same shall be paid as an Additional Payment, shall be secured by this Mortgage, and shall be recoverable by Mortgagee in any foreclosure, bankruptcy or insolvency proceeding.

## 15.    Mortgagee Not Responsible for Damage or Injury.

Mortgagor is and shall be in exclusive control and possession of the Mortgaged Property as provided herein, and Mortgagee shall not in any event or for any reason whatsoever be liable for any injury or damage to any property or to any person happening on or about the Premises, nor for any injury or damage to any property of Mortgagor, or of any other Person, contained therein.  The provisions hereof permitting Mortgagee to enter and inspect the Premises are made for the purpose of enabling Mortgagee to be informed as to whether Mortgagor is complying with the agreements, terms, covenants and conditions hereof, and to do such acts as Mortgagor shall fail to do, and are not intended to create any obligation or impose any responsibility on Mortgagee with respect to the Premises or any condition existing thereon or therein.

## 16.    Defaults.

(a)      Each of the following shall be an event of default: (i) failure to pay any Debt Service, Additional Payment, Deposit or Transfer Taxes when due; or (ii) failure to pay any Imposition or Insurance Premiums when required to be paid by the terms of this Mortgage, or in the event a notice to redeem relating to the Premises has been served in a proceeding under Article 11 of the Real Property Tax Law; or (iii) failure to exhibit to Mortgagee, within ten days after demand, receipts showing payment of all Impositions, Insurance Premiums or Transfer Taxes (except where payment of the specific item of Impositions or Insurance Premiums has been made by Mortgagee on Mortgagor's behalf from Deposits); or (iv) actual structural alteration, demolition or removal of any Improvement, or nonstructural alteration of any Improvement for which Mortgagee's consent is required under Paragraph 9(c), without the prior written consent of Mortgagee; or (v) failure to comply with (and where applicable, obtain a discharge of record of) any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within sixty days from notice thereof (or, for violations existing on the date of this Mortgage, within six months after the date of this Mortgage), to the reasonable satisfaction of Mortgagee, provided that if same cannot be discharged of record within such sixty (60) day (or six month, as the case may be) period, it shall not be an event of default hereunder if Mortgagor shall obtain the discharge of such violation within such longer period as is reasonably necessary to obtain the discharge of record (provided that Mortgagor has completed the work necessary to correct the violation within sixty days from notice thereof, or within six months from the date of this Mortgage for violations existing on the date of this Mortgage, and is diligently pursuing the discharge of record and the failure to obtain such discharge of record is beyond the reasonable control of Mortgagor); or (vi) if on application of Mortgagee or Mortgagor two or more insurance companies lawfully doing business in the State where the Premises are located refuse to issue policies insuring the

25

Improvements on the terms and conditions required by this Mortgage; or (vii) in the event of the removal, demolition or destruction in whole or in part of any of the Equipment, unless the same are promptly replaced by similar Equipment at least equal in quality and condition to those replaced, free from chattel mortgage, security interest or other encumbrances thereon and free from any, reservation of title thereto; or (viii) in the event of the passage of any law deducting from the value of land for the purposes of taxation, any lien thereon, or changing in any way the taxation of the mortgages or debts secured thereby for state or local purposes; or (ix) if Mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this Mortgage for which no specific event of default is provided in this Mortgage; or (x) if proceedings under any bankruptcy or insolvency law are commenced by or against Mortgagor, or if a general assignment for the benefit of creditors is made by Mortgagor or if a trustee or receiver of the property of Mortgagor be appointed and not dismissed within ninety days (except that the appointment of an administrator under Article 7A of the New York Real Property Actions and Proceedings Law shall be an immediate event of default with no grace period in which to obtain the dismissal of such appointment); or (xi) if Mortgagor requests or consents to any change in zoning affecting the Premises or any waiver of or exemption from enforcement of any applicable zoning requirement affecting the Premises, or materially varies the character or use of the Premises, or amends the certificate of occupancy, without in each such instance first obtaining the prior consent in writing thereto of Mortgagee, which consent may be withheld by Mortgagee for any or no reason; or (xii) if any representation or warranty made by Mortgagor or any of its affiliates, or any guarantor of the Mortgage and the Note, in the commitment letter for the Mortgage, or in any other document or information submitted to Mortgagee by Mortgagor, any such affiliate or any such guarantor in connection with such commitment letter or this Mortgage, shall have been untrue or inaccurate in any material respect when made or on the date of this Mortgage, or if Mortgagor, any such affiliate or any such guarantor has failed or fails in any material respect to perform its obligations under such commitment letter.

(b)     Upon the occurrence of any event of default described in Paragraph 16(a) or in any other provision of this Mortgage, and in the case of events of default for which a notice and/or cure period is expressly set forth, upon the expiration of such notice and/or cure period without the event of default having been cured, a default shall have occurred under this Mortgage which shall entitle Mortgagee, without further notice required by Mortgagee and without any further right to cure being allowed to Mortgagor, to immediately exercise any and all of its rights provided under this Mortgage or by law for default. Mortgagor acknowledges and agrees that except where this Mortgage expressly provides that Mortgagor is entitled to notice and/or an opportunity to cure a specified event of default, each and every event of default provided in this Mortgage shall, immediately upon its occurrence, constitute a default entitling Mortgagee to exercise all of such remedies. Mortgagor further acknowledges that wherever in this Mortgage is provided that Mortgagor is entitled to notice and/or an opportunity to cure with respect to any event of default, then immediately following the satisfaction of any such notice requirement and/or the expiration of the specified cure period, without further notice, the event of default shall become a default entitling Mortgagee to exercise all of such remedies.

17.     Remedies Upon Default.

26

(a) Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), all principal due under this Mortgage, all accrued interest, the Fee Payment and all other Additional Payments shall, at the option of Mortgagee, become immediately due and payable. If following an exercise by Mortgagee of its option to declare such sums immediately due and payable, Mortgagor shall tender payment of an amount which by law otherwise would entitle Mortgagor to redeem the Mortgaged Property from foreclosure prior to a sale thereof, then Mortgagor shall not be entitled to so redeem the Mortgaged Property unless Mortgagor shall include in such tender, in addition to all accrued interest and the principal balance, the Fee Payment and all other unpaid Additional Payments.

(b) In the event of a foreclosure of this Mortgage the Premises or so much thereof as may be affected by this Mortgage may be sold in one parcel, any provision of law to the contrary notwithstanding. Failure to join tenants as defendants shall not constitute any defense to the action.

(c) In the event of any foreclosure of this Mortgage, Mortgagee shall be entitled to apply any balance of Deposits held by Mortgagee under this Mortgage, against its costs, expenses and damages incurred by reason of such foreclosure of this Mortgage, and for this purpose shall be entitled to retain all such Deposits until a final determination of such costs, expenses and losses is made. Mortgagor shall also pay to Mortgagee on demand, as an Additional Payment, all Transfer Taxes for which Mortgagor is liable under this Mortgage, and all tenant security deposits held by Mortgagor or as may be reflected in leases or by receipts held by tenants, all accrued interest thereon, and any penalties and/or expenses relating thereto, except that Mortgagor shall not be required to pay to Mortgagee any such security deposits which were lawfully applied by Mortgagor, as landlord, upon default of and vacating of the Premises by the tenant. All such Transfer Taxes, interest and penalties, if any, and other sums may be paid by a receiver appointed in the foreclosure.

(d) Nothing in this Paragraph 17 shall limit or prejudice the right of Mortgagee to prove and obtain as liquidated damages in any bankruptcy, insolvency, receivership, reorganization or dissolution proceeding an amount equal to the maximum allowed by any statute or rule of law governing such proceeding and in effect at the time when such damages are to be proved, whether or not such amount be greater, equal to or less than any amount of damages provided herein.

(e) Upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), or upon the occurrence of any threatened alteration or demolition of the Mortgaged Property not permitted hereunder, or any actual or threatened waste to the Mortgaged Property, Mortgagee shall be entitled, as a matter of right and without regard to the adequacy of any security for the indebtedness secured hereby (and without notice in any action to foreclose this Mortgage and in such other actions or circumstances as may be permitted by law), to the appointment of a receiver for the Mortgaged Property, whether such receivership is incidental to a proposed sale of the Mortgaged Property or otherwise. Mortgagor hereby consents to the appointment of such a receiver and will not oppose any such appointment nor the exercise by such receiver of all rights of Mortgagee and/or Mortgagor arising from or related to the Mortgaged Property and the enjoyment of all benefits therefrom, whether or not

27

NC

CLER

expressly provided herein.

(f)     Upon any default of the Mortgagor (after the expiration of any applicable notice and/or cure period provided in this Mortgage) in complying with or performing any warranty or covenant herein, the Mortgagee may, at the Mortgagee's option, comply with or perform the same, and the cost thereof together with interest thereon at the Default Rate shall be paid by the Mortgagor to the Mortgagee on demand as an Additional Payment. If upon any default (after the expiration of any applicable notice and/or cure period provided in this Mortgage), the Mortgagee or a receiver enters upon and takes possession of the Premises, Mortgagee or such receiver shall be entitled to collect the rents therefrom and apply the same to the payment of Debt Service, Additional Payments and Deposits, and to the expenses of operating the Premises, which expenses are deemed to include without limitation, all costs of repairs and capital improvements, reasonable reserves set aside for repairs and capital improvements, management fees, receiver's fees, Impositions, Insurance Premiums and Transfer Taxes, and all other costs or expenses of any kind or nature which Mortgagee or a receiver may deem necessary or advisable to pay, or create reserves for, in connection with the Mortgaged Property. The amount, if any, by which all such expenses of operating the Premises exceed the net revenues collected from the Premises, together with interest thereon at the Default Rate shall be paid by the Mortgagor to the Mortgagee on demand as an Additional Payment. Mortgagee or such receiver shall be entitled to exercise all the rights and authority of Mortgagor in the operation of the Premises, including without limitation, leasing vacant space in the Premises, or extending or modifying the term of any lease on such terms as Mortgagee or such receiver may determine in its discretion, and to make or not to make such repairs or capital improvements as Mortgagee or such receiver deems advisable in its discretion. Mortgagee or such receiver shall have no liability to Mortgagor for any such action taken or not taken. Nothing in this subparagraph (f) shall in any way obligate Mortgagee or a receiver to advance any money to pay any expenses (including repairs or capital improvements) of the Premises, or to take any specific action in the operation of the Premises.

(g)     Mortgagee may, at Mortgagee's option, foreclose this Mortgage for any portion of the debt or any other sums secured hereby which are then due and payable, subject to the continuing lien of this Mortgage for the balance of the debt not then due.

(h)     With respect to any portion of the Mortgaged Property in which this Mortgage grants to Mortgagee a security interest under the Uniform Commercial Code, in addition to and without limiting any other remedies available to Mortgagee under this Mortgage or by law, Mortgagee shall be entitled to exercise all of the remedies of a secured party upon default available under the Uniform commercial Code.

18.     Waivers; Cumulative Remedies.

28

NC CLERK

(a) No failure by Mortgagee to insist upon the strict performance of any covenant, agreement, term or condition of this Mortgage or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial Debt Service during the continuance of any such breach, shall constitute a waiver of any such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Mortgage to be performed or complied with by Mortgagor, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by Mortgagee. No waiver of any breach shall affect or alter this Mortgage, but each and every covenant, agreement, term and condition of this Mortgage shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

(b) In the event of any breach or threatened breach by Mortgagor of any of the covenants, agreements, terms or conditions contained in this Mortgage, Mortgagee shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or otherwise, including proving actual damages, as though no other remedies were provided for in this Mortgage.

(c) Each right and remedy of Mortgagee provided for in this Mortgage shall be cumulative and shall be in addition to every other right or remedy provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Mortgagee of any one or more of the rights or remedies provided for in this Mortgage or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise, or be deemed a waiver, by Mortgagee of any or all other rights or remedies. Specifically, the enforcement of any provision of this Mortgage providing for payment by Mortgagor of liquidated damages, interest, costs or other charges upon the occurrence of any event of default hereunder shall not preclude Mortgagee from exercising any other remedies, including foreclosure, or proving actual damages, which it may have upon such event of default. It is also expressly agreed that Mortgagee's right to interest upon any sum in arrears owed by Mortgagor does not deprive Mortgagee of any other remedies respecting the event of default in question.

19. Transfers of the Mortgaged Property.

Any Transfer made or permitted by Mortgagor shall be an event of default under this Mortgage, entitling Mortgagee immediately, without notice or cure period, to exercise any or all of its remedies for default provided herein or by law.

(1) Notwithstanding anything to the contrary contained herein, Mortgagee shall allow members of the Mortgagor to assign their ownership interests in Mortgagor to their immediate family members or trusts for the benefit of immediate family members or entities comprised of immediate family members, provided that:

(a) Mortgagor is in compliance with all of the terms, conditions, covenants or undertakings in this Mortgage;
(b) Mortgagee is notified of the proposed assignment in writing at least fifteen (15) days prior to such assignment;

29

NC CLERK

(c) the assignee provides all of the credit and financial information, including required credit and O.F.A.C. (patriot) searches set forth in the Commitment and the assignee is approved by Mortgagee;

(d) the assignee assumes all of the terms, conditions, obligations and liabilities of assignor under the Commitment/Mortgage;

(e) Ely (a/k/a Eli) Kaffash shall continue to own a controlling interest in, and effectively control, Mortgagor following the assignment to assignee; and

(f) Mortgagee's fee: $500.00 plus the cost of al required credit and O.F.A.C. searches.

For purposes of this section, "control" shall mean possession of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting equity interests, by contract or otherwise (such definition to have the same meaning as such definition has in Regulation Section 230.405 under the Securities Act of 1933).

(2) Notwithstanding anything to the contrary contained herein, Mortgagee shall allow Mortgagor to sell the Mortgaged Property subject to the following provisions:

(a) Mortgagor is in compliance with all of the terms, conditions, covenants, or undertakings in this Mortgage;

(b) The purchaser is an individual or a business entity and not a not-for-profit corporation (or not-for-profit entity);

(c) The sale must be an arms-length sale to an unrelated third party, which is either (i) a newly formed business entity whose financial statement or pro forma financial statement has been presented to Mortgagee; or (ii) a business entity or individual approved by Mortgagee. Unless expressly approved by Mortgagee in writing in advance, the entity shall not be a not-for-profit corporation or comparable limited liability company;

(d) At or prior to Closing, Mortgagor shall pay a fee to Mortgagee of 1% of the outstanding principal balance of this Mortgage (this is not a Fee Payment and is not in reduction of the Mortgage);

(e) The purchaser and the principals of purchaser shall provide all of the credit and financial information set forth in the Commitment and are approved by Mortgagee:

(f) The purchaser and purchaser's principals meet the Mortgagee's standards for creditworthiness and provide all of the credit and financial information set forth in the Commitment and are approved by Mortgagee, including satisfactory credit and O.F.A.C. checks, at Purchaser's sole cost and expense; (financial statements, tax returns, etc.);

(g) Only one such sale is permitted during the term of this Mortgage;

(h) Upon the sale, the purchaser's principals shall execute similar guarantees as those executed by the original principals and guarantor(s) of Mortgagor under this Mortgage to Mortgagee;

(i) Mortgagor shall pay all of Mortgagee's costs and expenses, including, but not limited to, legal fees (even if the proposed sale does not close);

30

NC
CLERK

(j) Purchaser shall assume all of the terms, conditions, obligations and liabilities of Mortgagor under this Mortgage;

(k) The sale shall be of not less than the entire fee interest in the Premises and the entire ownership interest of Mortgagor in all of the other Mortgaged Property.

Notwithstanding the above, the right of Mortgagor to "assign" their ownership interest in Mortgagor (as set forth in paragraph (1) above); and Mortgagor to "sell" the Mortgaged Property subject to the Mortgage (as set forth in paragraph (2) above; shall expressly not be construed to permit Mortgagor or any member to pledge or otherwise encumber, in any manner whatsoever, the Mortgaged Property or any ownership interest in the Mortgaged Property or in Mortgagor."

20.    Tenant Leases.

Reference is made to Section 291f of the New York Real Property Law. Mortgagor covenants and agrees to each of the following provisions with respect to tenant leases:

(a)    Each tenant lease made after the date of this Mortgage shall be drawn on a standard New York Real Estate Board, NYBTU or similar form, and shall contain language expressly subordinating the lease to all mortgages now or hereafter affecting the Premises. If Mortgagor at any time is a cooperative corporation, each proprietary lease shall include the following language in a separate paragraph in the lease document (with the blank spaces filled in with the appropriate information with respect to this Mortgage): "This lease is subject and subordinate to the mortgage on the building of which the premises are a part, recorded in the office of the City Register, Nassau County, on _____, on Page _____, Reel _____, to each and every other mortgage which is now or hereafter may be a lien on the Mortgaged Property (as defined in such mortgage), and to any consolidation, extension, modification, or renewal of any thereof. It is intended that this subordination be self-operative, so that a written subordination executed on behalf of tenant should not be necessary to making the subordination effective. However, tenant agrees that whenever landlord or the holder of any such mortgage may request, tenant shall execute without charge a written subordination of tenant's rights under this lease to such mortgage (including any extension, modification, or renewal of any such mortgage), and the failure of tenant to deliver such subordination within seven days after request shall be a default with no grace period allowed." Mortgagor acknowledges and agrees that each such lease shall be subject and subordinate as provided in the preceding language whether or not the lease explicitly so provides.

(b)    All such leases shall be made only in accordance with all applicable rent regulations. Mortgagor shall comply with all applicable orders of rent regulatory authorities, and shall promptly refund all rent or other overcharges found to be due with respect to periods on or subsequent to the date of this Mortgage, and if Mortgagor or an affiliate shall have owned the Mortgaged Property prior to the date of this Mortgage, then also with respect to such period prior to the date of this Mortgage during which Mortgagor or such affiliate owned the Mortgaged Property, and pay when due any penalties, fees or damages which may be assessed, with respect to the Premises and the tenants and leases thereof.

(c)    Upon any foreclosure of this Mortgage, it is expressly agreed that Mortgagor shall

31

deliver to Mortgagee all leases, contracts, documents, rent rolls and other records used in the operation of the Premises, together with security deposits held by Mortgagor or as reflected in tenant leases or by receipts held by tenants, and all accrued interest due thereon. Mortgagor agrees to indemnify and save Mortgagee harmless from and against any claim or lien against Mortgagee or the Mortgaged Property for the return of any security deposits and interest under any leases with tenants.

(d)     Mortgagor shall not with respect to any present or future leases accept prepayment of rent prior to its due date in excess of one month.

(e)     Mortgagor shall furnish to Mortgagee, within 30 days after request but not more than twice in any calendar year, a full copy of each and every residential and commercial lease and lease renewal of the Premises. Original signed counterparts of all leases shall be exhibited to Mortgagee upon request within ten days.

(f)     Except as required by law, residential leases and renewals thereof shall be for a term not exceeding two years and shall be at the maximum rental permitted by law (or if less, fair market rental). Commercial leases and renewals thereof shall be for a term not to exceed ten years and at a monthly rental of not less than the highest monthly rental of the prior leasing period (or if less, fair market rental). No lease, either residential or commercial, shall contain any right by tenant to renew or extend the same. The provisions of this subparagraph (f) shall not apply to proprietary leases if Mortgagor is a cooperative corporation.

21.     Assignment of Leases and Rents.

(a)     Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest as landlord under all existing and future Leases, and the rents, issues and profits of the Mortgaged Property, as further security for the payment of Debt Service, Additional Payments, Deposits and Transfer Taxes, and in the event Mortgagee exercises its rights pursuant to Paragraph 21(b), as further security for the payment of all charges and expenses of operating the Premises, and all fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property.

(b)     In furtherance of the assignment provided in Paragraph 21(a), Mortgagor hereby grants to Mortgagee the following rights and powers: (i) to enter upon and take possession of the Premises; (ii) to demand payment of and collect the rents and other amounts payable under the Leases, and to demand and enforce performance of the terms, covenants and conditions of the Leases, by legal proceedings or otherwise; (iii) to exercise all of Mortgagor's rights, interests and remedies in and under the Leases; (iv) to settle, adjust or compromise the rents and other amounts payable under the Leases, and to settle, adjust or compromise any legal proceeding brought to collect the rents and other amounts payable thereunder or to obtain performance thereof; (v) to prepare, file and sign Mortgagor's name on any proof of claim in bankruptcy, or similar document in a similar proceeding, against obligors of the Leases; (vi) to endorse the name of Mortgagor upon any payment or proceeds of the rents and other amounts payable under the Leases and to deposit the same to the account of Mortgagee; (vii) to hold, manage, lease and operate the Mortgaged Property as Mortgagee may deem proper; (viii) to make necessary capital

32

NC
CLE

expenditures; (ix) to apply such rents, income and profits to the payment of all charges and expenses of operating the Premises, fees, disbursements and expenses of receivers, legal counsel, accountants, managing agents and other persons employed in connection with the Mortgaged Property, and to the payment of Debt Service, Additional Payments, Deposits, Impositions, Insurance Premiums and Transfer Taxes due under this Mortgage; and (x) to do all acts and things necessary, in Mortgagee's sole discretion, to carry out any or all of the foregoing.

(c)     In event the Mortgagor or any Person controlled by, controlling, or under common control with, Mortgagor, is an occupant of the Premises, then upon any default under this Mortgage (after the expiration of any applicable notice and/or cure period provided in this Mortgage), Mortgagor or such Person will pay monthly in advance to the Mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Mortgagor or such Person, and upon failure to make any such payment will vacate and surrender the possession of the Premises to the Mortgagee or to such receiver, and upon failure to vacate and surrender possession may be evicted by summary proceedings.

(d)     The Mortgagee hereby waives the right to enter upon and to take possession of the Premises for the purposes above set forth, including the right to take possession of the Premises for the purpose of collecting said rents, issues and profits, and Mortgagor shall be entitled to collect and receive said rents, issues and profits, until the occurrence of any event of default under this Mortgage (prior to the expiration of any applicable notice and/or cure period provided in this Mortgage). Mortgagor agrees to use such rents, issues and profits in payment of Debt Service, Additional Payments and Deposits, and in payment of Impositions, Insurance Premiums, Transfer Taxes and expenses of operating the Premises, and after payment of all such amounts which are then due, Mortgagor shall be entitled to retain any balance of rents, issues and profits then collected by it. Such right of Mortgagor to collect and receive the rents, issues and profits, may be revoked by the Mortgagee upon the occurrence of any event of default upon five days' written notice. Such right of revocation by Mortgagee shall become effective whether or not any other required notice has been given or applicable cure period has expired, whether or not foreclosure has been instituted and without applying for a receiver.

22.     Payments From Deposits; Mortgagee's Liability.

(a)     Mortgagee shall make all payments of Impositions and Insurance Premiums for which it is holding Deposits by their respective due dates, including grace periods, if and only if each of the following conditions is met: (i) Mortgagor has timely made all Deposits for any purpose which may be required or demanded by Mortgagee under Paragraph 4; (ii) Mortgagor is not overdue (without regard to any applicable notice and/or cure period) in the payment of any Debt Service or Additional Payments due under this Mortgage, and no other event of default shall have occurred and remain uncured after any applicable notice and/or cure period; (iii) no amount advanced by Mortgagee to satisfy any obligation of Mortgagor under this Mortgage, including interest thereon computed as provided in this Mortgage, remains unpaid by Mortgagor (whether or not the failure to have paid any such amount does not yet constitute a default because of any applicable notice or cure period or otherwise); and (iv) no action to foreclose this Mortgage or to enforce the Note or any other agreement relating thereto shall be pending.

33

NC
CLERK

(b)    Notwithstanding anything in this Mortgage which might otherwise be construed to the contrary, in no event shall Mortgagee at any time be liable to Mortgagor for any damages, costs or expenses in excess of Mortgagee's equity in this Mortgage. All judgments against Mortgagee or any of its principals or agents shall be enforced against said equity and not against any other present or future asset of Mortgagee or any of its principals or agents. Mortgagor hereby waives any rights Mortgagor may now or hereafter have to have recourse against such present or future assets. If Mortgagee fails to pay any payments of Impositions or Insurance Premiums for which it is holding adequate Deposits, or any other payment for which Mortgagee is or may become responsible with respect to the Mortgaged Property, Mortgagor, as its sole and exclusive remedy, may pay any such payment which Mortgagee has so failed to pay to the Person to whom due and may deduct the amount so paid from the next regular installments of Debt Service and/or Deposits, as the case may be, due hereunder.

(c)    Whenever in this Mortgage or as a matter of law it is provided that Mortgagee's consent or approval shall not be unreasonably withheld or the actions of Mortgagee shall be reasonable, the remedy of Mortgagor, in the event Mortgagor shall claim or establish that Mortgagee has unreasonably withheld such consent or approval or has acted unreasonably, shall be limited to injunctive relief or declaratory judgment, and in no such event shall Mortgagor be entitled to obtain, nor shall Mortgagee be liable for, a money judgment.

## 23.    Prepayment.

This Mortgage may be prepaid in full, but not in part, at any time upon 30 days written notice, provided, however, that the Fee Payment shall be due upon the Fee Payment Date arising as a result of such prepayment. Upon the giving of notice of prepayment, the Mortgage is due and payable in full on the date specified in such notice as if such date were the maturity date specified herein.

## 24.    Procedure for Payment at Maturity or Upon Prepayment.

Mortgagor shall pay to Mortgagee or its designated agent at maturity or upon prepayment permitted under Paragraph 23 the unpaid principal balance hereof, accrued interest thereon, the Fee Payment and all then due and unpaid Additional Payments. Payment at maturity or upon prepayment permitted under Paragraph 23 shall be made as follows: (i) by unendorsed certified check or unendorsed bank cashier's check drawn in U.S. dollars to the order of Mortgagee or such agent on a New York banking institution which is a member of the New York Clearing House, and received by Mortgagee or such agent at its offices at or before 1:00 p.m. on a Banking Day, at the address of Mortgagee specified at the beginning of this Mortgage or furnished pursuant to the provisions of Paragraph 27; or (ii) at Mortgagee's sole option, by wire transfer and received in Mortgagee's bank account at or before 1:00 p.m. on a Banking Day. Payment shall include interest computed to and including the date of delivery of the check in payment or the date of receipt of wire.

34

NC

CLE

Upon the delivery of such instrument and upon the making of such payment by Mortgagor, Mortgagee shall deliver to Mortgagor, at Mortgagor's election, either (i) a satisfaction of this Mortgage (which may by its terms provide for discharge of all of Mortgagee's obligations hereunder from and after the date of delivery thereof), or (ii) an assignment of this Mortgage without recourse or representation and in such form as Mortgagee shall determine in its sole discretion. All taxes and expenses in connection with the satisfaction or assignment of this Mortgage, together with Lender's administrative fee of $2,500.00 (in the case of an assignment) and the fees and disbursements of Mortgagee's attorney for preparation of necessary documents and attendance at the Mortgage payoff closing, shall be paid by Mortgagor, and shall be deemed an Additional Payment due and payable with the payment being made on this Mortgage. Mortgagor shall advise Mortgagee in writing of the date, time and place scheduled for the payoff closing.

## 25. Reduction of Principal Balance By Insurance and Condemnation Proceeds.

In the event the unpaid principal balance of this Mortgage is reduced by the Mortgagee or a receiver applying insurance proceeds or condemnation awards in reduction thereof, or by prepayments made by Mortgagor with the prior written consent of Mortgagee, then notwithstanding such reduction, Debt Service shall continue to be payable in accordance with the terms of this Mortgage, and the amount of such reduction shall be applied against payments coming due under this Mortgage in the inverse order of their maturity.

## 26. Junior Mortgages.

Mortgagor shall not place any Junior Mortgage on the Mortgaged Property or any part thereof, or otherwise create a security interest in or encumber the Mortgaged Property or any part thereof. Mortgagor shall not permit the Mortgaged Property or any part thereof to be cross-collateralized with any other property, whether owned by Mortgagor or by any other Person. Any breach of any provision of this Paragraph 26 shall be an event of default under this Mortgage, and shall entitle Mortgagee, without any notice or grace period, to exercise any and all remedies provided for default in this Mortgage or otherwise permitted by law.

## 27. Notices; Designation of Agent.

(a) Whenever it is provided herein that notice, demand, request or other communication shall or may be given to or served upon either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice, demand, request or other communication with respect hereto or the Mortgaged Property, each such notice, demand, request or other communication shall be in writing and, any law or statute to the contrary notwithstanding, shall be effective for any purpose only if given or served as follows:

(i) If by Mortgagee, by mailing the same to Mortgagor by certified or registered mail postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service, addressed to Mortgagor at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagor may from time to time designate by like notice.

35

NC
CLERK

(ii)     If by Mortgagor, by mailing the same to Mortgagee by registered or certified mail, postage prepaid, return receipt requested, or by receipted delivery by a nationally recognized reputable overnight courier service, addressed to Mortgagee at the address set forth at the beginning of this Mortgage, or at such other address as Mortgagee may from time to time designate by like notice.

(iii)    Every notice, demand, request or other communication hereunder shall be deemed to have been given or served 72 hours after the time that the same shall be deposited in the United States mail, postage prepaid, in the manner aforesaid. Notwithstanding the previous sentence, if notice, demand, request or other communication hereunder shall be sent by a nationally recognized overnight courier service, such notice, demand, request or other communication shall be deemed to have been given the next business day.

(b)     Mortgagor shall pay to Mortgagee immediately upon demand a service fee of $25 each time that Mortgagee elects to use for any reason, certified or registered mail, by hand delivery or recognized overnight carrier. Mortgagee, at its election, may deduct this charge from the Deposits.

(c)     Mortgagor hereby appoints Seymour I. Hurwitz, Esq., an attorney at law of the State of New York, with a business address at 19 West 44th Street, Suite 1507, New York, New York 10036, business phone #: 212-398-1940, as Mortgagor's agent for service of process for any matters relating to this Mortgage and the Loan Documents. Mortgagor covenants that revocation of this appointment shall not be effective unless Mortgagor provides Mortgagee at least thirty (30) days prior written notice and Mortgagor simultaneously appoints in writing a substitute agent for service of process, which substitute agent shall be an attorney at law in the State of New York maintaining an office in the State of New York.

28.    Mortgagor's Certificate; Statement of Balances.

(a)     Mortgagor shall, without charge, at any time and from time to time, within ten days after request by Mortgagee, certify by written instrument, duly executed, acknowledged and delivered to Mortgagee or any other Person specified by Mortgagee: (i) that this Mortgage is unmodified and in full force and effect or, if there have been any modifications or release of security from this Mortgage, that the same is in full force and effect as modified, and stating the modifications and describing any security released; (ii) whether or not there are then existing any setoffs or defenses against the Mortgage debt or the enforcement of any of the agreements, terms, covenants or conditions of this Mortgage upon the part of Mortgagor to be performed or complied with, and, if so, specifying the same; and (iii) the amount of the debt secured by this Mortgage, the outstanding principal balance, the rate of interest, and the date to which interest has been paid. Mortgagor's failure to provide such certificate within such ten day period shall be an event of default hereunder, and shall entitle Mortgagee to exercise any or all of its remedies for default provided hereunder or by law if such event of default is not cured within ten days after notice is given by Mortgagee.

36

NC
CLERK

(b) Mortgagee shall be entitled, at any time and from time to time, to send to Mortgagor a statement setting forth the balance of Deposits then held by Mortgagee. If Mortgagor does not dispute such balances by written notice to Mortgagee given within sixty days after the date Mortgagee sends the statement to Mortgagor, then Mortgagor shall be deemed to admit the correctness of such balances and of all disbursements of Deposits by Mortgagee which are reflected on such statement, and Mortgagor shall thereafter have no right to contest such balances or the correctness of any such disbursements, by legal proceedings or otherwise.

## 29. Financial Statements and Other Information.

(a)    (i)    Prior to March 31 of each calendar year, Mortgagor shall furnish to Mortgagee a balance sheet, statement of income and expense, and statement of changes in financial condition and/or stockholders equity of Mortgagor which shall, if Mortgagor is not a cooperative corporation, be sworn to by a principal of the Mortgagor, and if Mortgagor is a cooperative corporation, be certified by an independent certified public accountant and accompanied by such accountant's opinion, in each case stating that such financial statements present fairly the information shown therein in conformity with generally accepted accounting principles.

(ii)    At any time and from time to time, but not more than once in any calendar year, within 60 days after a written request therefor has been made, Mortgagor shall furnish to Mortgagee such other financial statements for the Mortgaged Property as Mortgagee shall specify in such request. Such statements shall be for the calendar year set forth in such request. Mortgagor shall also furnish within 10 days after written request, but not more than twice in any calendar year, a current rent schedule of the Mortgaged Premises certified by Mortgagor or its agent setting forth the name of each tenant, space occupied, monthly rent, arrears, lease security and lease expiration date.

(b)    In the event the Mortgaged Property is conveyed to a cooperative corporation, such statement and rent schedule of Mortgagor shall include pertinent information with regard to the cooperative corporation including, without limitation, the names and addresses of the tenant-shareholder of each apartment, the identity of the apartments whose shares are deemed "unsold shares" under the plan of cooperative conversion, the names of and rental paid by and lease expiration dates of the tenants in possession of such apartments whose shares are deemed "unsold shares", the identity of any apartment which is being sublet by the tenant-shareholder and the name of and rental paid by the sublessee and the sublease expiration date, the current annual budget, the apartments which have been sold since the previous statement and the price and terms of each sale, the current maintenance or rent payable by each tenant-shareholder and the details of any impositions or assessments levied upon tenant-shareholders.

(c)    Mortgagor shall give prompt notice to Mortgagee of any actions or proceedings instituted by or against Mortgagor in any federal or state court or by any governmental department, agency or instrumentality, or any such actions or proceedings threatened against Mortgagor, affecting the Mortgaged Property or which, if adversely determined, would have a material adverse effect upon Mortgagor's business, assets or condition, financial or other, or upon the lien of this Mortgage. Any notice so given shall specify what action Mortgagor is

37

taking or proposes to take with respect thereto and shall include a copy of any documents relevant thereto.

## 30. Lien Law.

Mortgagor agrees, in compliance with Section 13 of the Lien Law, that Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

## 31. Good Standing of Mortgagor.

If Mortgagor is a corporation, partnership, limited liability company or trust, it shall keep in effect its existence and rights as a corporation, partnership, limited liability company, or trust under the laws of the state of its incorporation or formation and its right to own property and transact business in the state in which the Premises are situated during the entire time that it has any interest in the Mortgaged Property or any part thereof. For all periods during which title or beneficial title to the Mortgaged Property or any part thereof shall be held by a partnership, trust, corporation or association subject to corporate franchise taxes, income taxes, license or other fees or taxes, or any taxes similar to any thereof, Mortgagor shall file returns for such taxes or license or other fees with the proper authorities, bureaus or departments and it shall pay, when due and payable and before interest or penalties are due thereon, all such taxes or license or other fees owing by Mortgagor to the United States, to such state of incorporation or formation and to the state in which the Premises are situated and any political subdivision thereof. Upon written request of Mortgagee not more than once a year, Mortgagor shall within 15 days supply evidence satisfactory to Mortgagee of the good standing of Mortgagor in the state of its formation (and if different, in the State of New York).

## 32. Partial Exculpation of Mortgagor.

(a)    Notwithstanding anything to the contrary contained in this Mortgage (but subject to Paragraphs 32(b) and (c)), in any action brought to enforce the obligation of Mortgagor to pay the indebtedness evidenced by the Note or to enforce the obligations of Mortgagor created or arising under this Mortgage, the judgment or decree shall be enforceable against only the Mortgaged Property. Mortgagee shall have no right to sue for, seek or demand any deficiency judgment or personal money judgment against (i) any officer, director, shareholder, member, manager or principal of Mortgagor or any officer, director, shareholder or principal of a member or manager of Mortgagor, (ii) any partner of Mortgagor or any partner, officer, director or shareholder of Mortgagor's partners, or (iii) any legal representative, heir, legatee, successor or assignee of any of the foregoing, in any foreclosure action under or by reason of, or in connection with, this Mortgage. Any such judgment shall not be subject to execution on, or be a lien on, assets of any of the persons described in clauses (i) through (iii) above except to the extent of any such person's interest in the Mortgaged Property.

(b)    The provisions of this Paragraph 32 shall not (i) prevent recourse to the Mortgaged Property, through the foreclosure or enforcement of any lien or security interest

38

granted to Mortgagee under the Mortgage, (ii) limit or impair the rights of Mortgagee to apply Deposits, or to apply proceeds of insurance or condemnation under this Mortgage, to the payment of the obligations secured by this Mortgage, (iii) constitute a waiver, release or discharge of, or otherwise affect the obligation to pay, any indebtedness evidenced or secured by the Note or this Mortgage, (iv) limit the right of any person to name Mortgagor or any transferee of an interest in the Mortgaged Property, or any tenant or occupant of the Premises, or any other person claiming an interest in or right to the Premises, as party defendant in any action or suit for judicial foreclosure, (v) limit the right of Mortgagee to exercise or seek against any person any equitable remedy (including specific performance and injunctive relief) so long as, subject to Paragraph 32(c), no judgment in the nature of a deficiency or personal money judgment shall be asked for, obtained or enforced against Mortgagor or any of the persons described in clauses (i) through (iii) of Paragraph 32(a), or (vi) limit the liability of, and the right of Mortgagee to obtain and enforce a personal judgment against, any person who shall have guaranteed either or both of payment and performance of any or all of the obligations evidenced or secured by the Note or this Mortgage.

(c) The foregoing provisions of this Paragraph 32 shall in no way limit or otherwise affect the personal liability of Mortgagor and any other responsible person (including the other persons described in clauses (i) through (iii) of Paragraph 32(a)) with respect to, and Mortgagor and any such responsible person shall be personally liable for the payment of (i) all security deposits of tenants under Leases, and any rents that are collected more than one month in advance, (ii) proceeds paid under any insurance policies by reason of damage, loss or destruction to any portion of the Mortgaged Property, or proceeds or awards resulting from the condemnation or other taking in lieu of condemnation of any portion of the Mortgaged Property, which are not applied in accordance with the terms of this Mortgage, (iii) any loss arising as a result of any violation of any Hazardous Substance Law, any amount for which Mortgagor has agreed to indemnify Mortgagee under Paragraph 9(f)(iii), and any loss arising as a result of any breach of a representation or covenant of Mortgagor under Paragraph 9(g), (iv) any loss resulting from the intentional or fraudulent commission of waste or omission of an action which results in waste to the Mortgaged Property, and (v) all costs, fees and expenses of enforcing payment of the obligations contained in clauses (i) through (iv) above, whether by litigation or otherwise.

33.    Instruments of Further Assurance, Etc.

NC

CLERK

At any time and from time to time, upon Mortgagee's reasonable written request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee and, where appropriate, shall cause to be recorded or filed and from time to time thereafter to be rerecorded or re-filed at such time and in such offices and places as shall be deemed desirable by Mortgagee, without charge to Mortgagee (but Mortgagee shall bear the costs of filing or recording), any and all such further mortgages, instruments of further assurance, certificates, UCC financing statements, and other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete, or perfect, or to continue and preserve the obligations of Mortgagor under this Mortgage, and the lien of this Mortgage. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, rerecord or re-file any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Mortgagee the agent and attorney-in-fact of Mortgagor to do so, and the cost of doing the same, including attorneys fees and disbursements, shall be payable by Mortgagor.

## 34. Conversion Offering Plans.

In the event of the submission to the Attorney General (or other authority with whom a filing may be required to be made) of a plan, preliminary prospectus, plan amendment or other similar documents relating to conversion of the Mortgaged Property to cooperative ownership, Mortgagor shall immediately deliver to Mortgagee five copies of any such plan, prospectus and other documents so submitted for filing, and shall further immediately deliver to Mortgagee, upon submission to the Attorney General (or other authority) thereof, five copies of any amendments submitted for filing to any such plan, prospectus and other documents, and five copies of any plan, prospectus, amendments or other documents accepted for filing by the Attorney General (or other authority). Mortgagor shall also promptly furnish to Mortgagee any additional documents or information which Mortgagee may reasonably request relating to the proposed conversion to cooperative ownership. In the event that any such plan, prospectus, amendments, documents or information have not been delivered within fifteen days after the submission of the same to the Attorney General (or other authority), or Mortgagee's request, as the case may be, then in addition to and without in any way waiving any other remedies, Mortgagee shall be entitled to procure copies of such documents on its own, and the cost thereof, including any fees and disbursements of legal counsel, shall be immediately due and payable by Mortgagor as an Additional Payment.

## 35. [Intentionally Omitted].

## 36. Miscellaneous.

(a)    Any payment of Debt Service, Additional Payments or Deposits due from Mortgagor to Mortgagee shall not be considered timely made when due unless it shall be actually received by Mortgagee no later than 1:00 p.m. in New York City on the date when due. Any references to a time of day in this Mortgage shall be Eastern Standard Time or Eastern Daylight Time, as applicable.

NC CLERK

(b) Mortgagor shall pay to Mortgagee on the date hereof, and on each anniversary of the date hereof, a service charge calculated per tax lot included in the Mortgaged Property, on the original principal amount of this Mortgage, as follows: (i) Mortgage $1,000,000.00 or less -- $250.00 for the first tax lot plus $125.00 for each additional tax lot; (ii) Mortgage amount more than $1,000,000.00 and $2,500,000.00 or less -- $350.00 for the first tax lot plus $175.00 for each additional tax lot; (iii) Mortgage amount more than $2,500,000.00 and $5,000,000.00 or less -- $500.00 for the first tax lot plus $250.00 for each additional tax lot; and (iv) Mortgage amount more than $5,000,000.00 -- $650.00 for the first tax lot plus $325.00 for each additional tax lot. Mortgagee shall deduct the service charge from the Deposits being held by Mortgagee. There shall be no proration of this charge on the maturity date or the date of (or by reason of) any prepayment.

(c) In the event the holder at any time of this Mortgage shall sell, transfer or assign this Mortgage, such holder shall be and hereby is entirely discharged, released and relieved of all covenants, obligations and liabilities of Mortgagee hereunder as of the date of such sale, transfer or assignment, provided that such holder shall continue to be entitled to the benefit of all indemnities by Mortgagor in favor of Mortgagee provided in this Mortgage.

(d) There shall be no merger of this Mortgage with the fee estate in the Mortgaged Property by reason of the fact that this Mortgage or any interest therein may be held, directly or indirectly, by or for the account of any Person or Persons who shall own the fee estate in the Mortgaged Property, or any interest therein. No such merger shall occur unless and until Mortgagee and Mortgagor shall join in a written instrument effecting such merger.

(e) Nothing in this Mortgage shall require Mortgagor to pay any interest, liquidated damages or any other charge which might be construed as interest in an amount which would subject Mortgagee to any penalty or permit any declaration of invalidity of the Note or this Mortgage under any applicable usury or other law. In the event any payment of interest or any other amount which might be construed as interest pursuant to this Mortgage or the Note would subject Mortgagee to such a penalty or permit any such declaration of invalidity, then such payments of interest, liquidated damages or other charges required to be made by the Mortgagor shall not be greater than the highest amount which, if construed as interest, would be authorized under applicable law without penalty.

(f) All interest due hereunder shall be calculated on the basis of a 360 day year for the actual number of days elapsed.

(g) All payments received by Mortgagee under this Mortgage shall be applied, unless another provision of this Mortgage explicitly provides otherwise with respect to a particular payment, first to interest then due and payable, then to Deposits then due and payable, then to Additional Payments then due and payable, and then to principal.

(h) No grant by Mortgagor to Mortgagee of any power of attorney provided in this Mortgage shall be construed as in any way relieving Mortgagor of the obligation to execute the document or perform the act which Mortgagee is authorized by such power of attorney to execute or perform in Mortgagor's name.

41

NC CLERK

(i)     In any case where Mortgagor may be required pursuant to the terms of this Mortgage to furnish any document, statement, notice or writing of any kind, such document, statement, notice or writing, at the election of Mortgagee, shall be furnished in the form reasonably specified or supplied by Mortgagee.

(j)     This Mortgage contains the entire agreement between the parties with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto. This Mortgage cannot be changed or terminated orally, but only by an instrument in writing executed by Mortgagee and Mortgagor.

(k)     If any term or provision of this Mortgage or the application thereof to any person or circumstance shall, to any extent be invalid or unenforceable, the remainder of this Mortgage, or the application of such term or provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

(l)     Each and every power of attorney granted in this Mortgage (i) shall be deemed to be coupled with an interest, is irrevocable, and shall survive the death, disability, incompetency or bankruptcy (to the maximum extent permitted by law) of Mortgagor, and (ii) shall be exercisable by each and every Person who at any time may be the Mortgagee, shall constitute a power of attorney granted by each and every Person who at any time may be the Mortgagor, and shall continue to be binding upon and effective with respect to any Person who was and is no longer the Mortgagor to the extent that Mortgagee may need to execute documents or take action in such Person's name with respect to the Mortgaged Property.

(m)     Mortgagor waives trial by jury and the right to interpose any setoff or counterclaim whatsoever, in any action or proceeding to enforce any one or more of the provisions of this Mortgage and/or the Note, and agrees not to seek consolidation or obtain a joint trial of any action or proceeding in which Mortgagor shall make a claim against Mortgagee of any nature or description.

(n)     Mortgagor hereby submits to the jurisdiction of the Supreme Court of the State of New York for any action or claim brought by the Mortgagee pursuant to this Mortgage, and agrees to accept service by ordinary, registered or certified mail, whether or not return receipt is requested, sent to Mortgagor at its address for notices as provided in this Mortgage.

(o)     If Mortgagor shall be more than one Person, then all of the covenants and agreements of Mortgagor in this Mortgage shall be the joint and several covenants of each such Person.

(p)     Mortgagee shall charge, and Mortgagor shall pay upon demand, a fee of $100.00 each time Mortgagee responds to any credit or payment verification, deposit verification or other request for information by or about Mortgagor, and a fee of $100.00 each time a request to Mortgagee is made to provide a payoff letter or an amendment to a payoff letter with respect to this Mortgage, which fees may, at Mortgagee's option, be deducted from the Deposits.

42

NC CLERK

(q)    Mortgagee, at Mortgagee's sole option and without any obligation to do so, may, at any time during the term of this Mortgage order an appraisal of the Mortgaged Property. All costs associated with such appraisal are the expense of Mortgagor, and shall be paid by Mortgagor on demand, or at Mortgagee's sole option, deducted from the Deposits held hereunder. Mortgagor will cooperate with the appraiser in promptly providing access to the Mortgaged Property and in promptly supplying such information with respect to the Mortgaged Property as the appraiser may request.

(r)    Paragraph captions contained in this Mortgage are inserted only as a matter of convenience and for reference and in no way define, limit, or extend or describe the scope of this Mortgage or the intent of any provision hereof.

(s)    The masculine gender shall include the feminine and neuter genders, and the singular shall include the plural.

(t)    This Mortgage may be executed in several counterparts and all so executed shall constitute one Mortgage, binding on all the parties hereto, notwithstanding that all the parties are not signatories to the same counterparts.

(u)    This Mortgage shall be governed by, and construed in accordance with the laws of the State of New York.

(v)    The agreements, terms, covenants and conditions herein shall run with the land and shall bind and inure to the benefit of Mortgagee and Mortgagor and their respective heirs, personal representatives, successors and, except as otherwise provided herein, their assigns.

(w)    This Mortgage does not cover real property improved or to be improved with a structure containing six residential units or less, each dwelling unit having its own special cooking facilities.

(x)    No demolition, excavation or construction is permitted during the term of the Note and this Mortgage.

(y)    Mortgagor agrees to the obligations set forth in Schedules C and D attached hereto and made a part hereof and agrees that it shall perform the required actions, within the time periods indicated therein.

43

NC CLERK

IN WITNESS WHEREOF, this instrument has been duly executed by the Mortgagor.

EMPIRE PLAZA REALTY LLC
a New York limited liability company

By:

Ely (a/k/a Eli) Kaffash
Member

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

On the 17th day of September in the year 2008 before me, the undersigned, personally appeared ELY (a/k/a ELI) KAFFASH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Karen Corso
Notary Public, State of New York
No. 01CO6031691
Qualified in Suffolk County
Commission Expires Oct. 12, 20 2 9

44

# FEDERAL STANDARD ABSTRACT, INC

### Title Number: FSA282-02856N

## S C H E D U L E  A

ALL that certain plot, piece or parcel of land, situate, lying and being at West Hempstead, in the Town of Hempstead, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Hempstead Turnpike with the easterly side of Arden Boulevard;

RUNNING THENCE along the easterly side of Arden Boulevard, North 10 degrees 25 minutes 40 seconds East, a distance of 185.23 feet to the corner formed by the intersection of the easterly side of Arden Boulevard with the southerly side of Parker Avenue (Park Avenue);

THENCE along the southerly side of Parker Avenue, South 79 degrees 34 minutes 20 seconds East, a distance of 169.63 feet;

THENCE South 11 degrees 06 minutes 10 seconds West, a distance of 184.17 feet to the northerly side of Hempstead Turnpike;

THENCE along the northerly side of Hempstead Turnpike, North 79 degrees 56 minutes 20 seconds West, a distance of 167.46 feet to the corner aforementioned at the point or place of BEGINNING.

| For Conveyancing ONLY | TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises. |
|---|---|
| For Information ONLY | The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property. |

NC CLERK

## SCHEDULE B

### Payment of Indebtedness

follows:

The indebtedness evidenced by this Mortgage and the Note shall be payable as

(a)     A payment of interest only calculated at the Interest Rate for the period from and including the date of this Mortgage to and including September 30, 2008, shall be due and payable upon the execution of this Mortgage. Thereafter, payments in an amount set forth in paragraph (b) below, applied in accordance with this Mortgage, shall be due and payable on the first day of each calendar month, commencing on November 1, 2008, and continuing thereafter on the first day of each calendar month to and including September 1, 2013, on which date all outstanding principal, together with all accrued and unpaid interest and any and all other amounts of any nature whatsoever due hereunder, shall be due and payable in full. In addition, the Fee Payment shall be due and payable on each and every Fee Payment Date which may arise under this Mortgage.

(b)     The monthly payments commencing with the payment due on November 1, 2008 and for the balance of the term of this Mortgage shall be $21,950.00.

(c)     The Interest Rate in effect on any day throughout the term of this Mortgage shall be 6.00% per annum.

46

NC CLERK

## SCHEDULE C

### Undertaking

Mortgagor hereby undertakes to provide the following to Mortgagee, which shall be satisfactory to Mortgagee in all respects:

1.    On or before December 16, 2008, original, fully executed tenant estoppel certificates (the "Estoppels") on Lender's standard form, duly executed by (i) Gal Gazit, M.D. PLLC (d/b/a Medical Weight Control and Nutrition), in conjunction with that certain lease dated December [sic], 2000, as amended, between Borrower as successor in interest to Cedar Ridge Properties, LLC, as landlord, and Gal Gazit, M.D. PLLC (d/b/a Medical Weight Control and Nutrition), as Tenant, for Store #8 located at the Mortgaged Premises; and (ii) Louis Reuter, in conjunction with the occupancy of Unit 124 located at the Mortgaged Property, which Estoppels shall be satisfactory to Mortgagee in Mortgagee's sole discretion.

Mortgagor hereby acknowledges receipt of Mortgagee's standard form of tenant estoppel certificate.

Mortgagor shall indemnify, defend and hold Lender harmless of and from any loss, cost, damage or expenses incurred by Mortgagee by reason of any negative information contained in, or failure to obtain, the Estoppels.

Mortgagor is hereby obligated to pay all fees and costs relating to obtaining the Estoppels required under this Schedule C.

The failure of Mortgagor to comply with the conditions set forth in this Schedule C shall be a default under the terms of this Mortgage.

NC CLERK

## SCHEDULE D

### Satisfaction Undertaking

On or before November 17, 2008, Mortgagor hereby undertakes to deliver to Mortgagee the following documents, each of which shall be satisfactory to Mortgagee in all respects:

> (1) an original, or copy certified by the Nassau County clerk's office, of the recorded satisfaction of mortgage for the certain mortgages assumed and consolidated in the certain Assumption, Consolidation, Extension and Modification Agreement (the "Existing Mortgage") between Sun & Sun Corp., as mortgagor, and Nara Bank, as mortgagee, dated March 14, 2007 and recorded March 28, 2007 in Liber 31706, page 414 and affecting the Mortgaged Property, and
>
> (2) an original, or copy certified by the Nassau County clerk's office, of the recorded termination of assignment of leases and rents for the certain Assignment of Leases and Rents ("Assignment") between Sun & Sun Corp. and Nara Bank dated March 14, 2007 and recorded March 28, 2007 in Liber 31706, page 439 and affecting the Mortgaged Property.

Mortgagor hereby undertakes to perform all actions necessary to discharge and remove from record the Existing Mortgage and the Assignment, on or before November 17, 2008.

Mortgagor hereby acknowledges that the proceeds of the Loan were used to satisfy the lien of Existing Mortgage.

Mortgagor shall indemnify, defend and hold Lender harmless of and from any loss, cost, damage or expenses incurred by Mortgagee by reason of the Existing Mortgage and the Assignment not being discharged or removed from record. Mortgagor is hereby obligated to pay all fees and costs relating to obtaining the satisfaction of the Existing Mortgage, the termination of the Assignment and removing the Existing Mortgage and Assignment from record.

The failure of Mortgagor to comply with the conditions set forth in this Schedule D shall be a default under the terms of this Mortgage.

NC CLERK

MORTGAGE
(And Assignment of Leases and Rents
and Security Agreement)

DATE:              September 17, 2008

MORTGAGOR:         EMPIRE PLAZA REALTY LLC

MORTGAGEE:         INTERVEST NATIONAL BANK

ADDRESS OF
PROPERTY:          300 Hempstead Turnpike
                   West Hempstead, New York

Section: 33, Block: 502, Lot: 233
Town of Hempstead, County of Nassau

Record and Return to:
Intervest National Bank
One Rockefeller Plaza, Suite 400
New York, New York 10020-2002





NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 06-22-2010      Record and Return To:
Recorded Time:  3:10:47 p      INTERVEST NATIONAL BANK
                               ONE ROCKEFELLER PLAZA
    Liber Book: M  34927       STE 400
    Pages From:      58        NEW YORK, NY  10020-2002
           To:      68

    Control
    Number:  2343
    Ref #: DB  009969
    Doc Type: M08  MORTGAGE AGREEMENT

Location:                 Section Block    Lot    Unit
HEMPSTEAD (2820)          0033   00502-00 00233

                                  Taxes Total            .00
                               Recording Totals       105.00
AAR001                           Total Payment        105.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                      MAUREEN O'CONNELL
                       COUNTY CLERK



2010062202343

FMR-100619N

## MODIFICATION OF
## MORTGAGE AND NOTE

THIS MODIFICATION OF MORTGAGE AND NOTE (the "Agreement") dated May 17, 2010 and effective as of April 1, 2010, between EMPIRE PLAZA REALTY LLC, a New York limited liability company, having an address at 98 Cuttermill Road, Suite 442B, Great Neck, New York 11021 (the "Mortgagor") and INTERVEST NATIONAL BANK, having an address at One Rockefeller Plaza, Suite 400, New York, New York 10020-2002 (the "Mortgagee").

## W I T N E S S E T H :

WHEREAS, the Mortgagee is the owner and holder of that certain mortgage identified on Exhibit A attached hereto and made a part hereof (which mortgage, as now exists, and as hereby extended, and as the same may hereafter, from time to time, be extended, modified or replaced is hereinafter collectively referred to as the "Mortgage"), and of the mortgage note more particularly described therein and secured thereby (the "Note"); and

WHEREAS, the Mortgage is now a lien upon the property described in Exhibit B annexed hereto and made a part hereof in the outstanding principal balance of $3,317,665.02 and the payment of interest (which has been paid) through May 1, 2010; and

Section 33

WHEREAS, the Mortgagee and the Mortgagor, have mutually agreed to modify the term of the Mortgage and the Note as hereinafter set forth; and

Block 502

WHEREAS, the Mortgage and the Note and any other documents executed and delivered in connection therewith (collectively, "Loan Documents") remain in full force and effect in accordance with their respective terms and are unmodified, except as modified as expressly set forth herein.

lot 133

NOW, THEREFORE, in consideration of the covenants and agreements herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1. Capitalized terms used herein and not defined shall have the respective meanings ascribed to such terms in the Loan Documents. The recitals are herein incorporated by reference.

2. Mortgagor acknowledges that the principal balance of $3,317,665.02 is owing under the Loan, without any offset, defense or abatement whatsoever, and that Mortgagor is absolutely and unconditionally liable therefor, together with all accrued interest and charges thereon. Mortgagor further acknowledges that the

Note, the Mortgage and the other Loan Documents constitute valid and bona-fide obligations of Mortgagor, that the Note, the Mortgage and the other Loan Documents remain in full force and effect, in accordance with their terms, as of the date of this Agreement, that the same have not been modified, other than as set forth herein, and that the Mortgage constitutes a valid first mortgage lien upon the Mortgaged Property.

3.    Schedule A of the Note and Schedule B of the Mortgage are each hereby modified as follows:

## "Payment of Indebtedness

(a)    Payments in an amount set forth in paragraph (b) below, applied in accordance with the Mortgage and the Note, shall be due and payable on the first day of each calendar month, commencing on May 1, 2010, and continuing thereafter on the first day of each calendar month to and including September 1, 2013, on which date all outstanding principal, together with all accrued and unpaid interest and any and all other amounts of any nature whatsoever due hereunder, shall be due and payable in full. As provided in the Mortgage, the Fee Payment shall be due and payable on each and every Fee Payment Date that may arise under the Mortgage.

(b)    The Interest Rate in effect on any day during the term of the Mortgage and the Note shall be 6.00% per annum.

(c)    Notwithstanding the fact that the Interest Rate in effect on any day during the term of the Mortgage and the Note shall be 6.00% per annum, commencing with the monthly payment due on May 1, 2010 to and including the monthly payment due on July 1, 2011 (the "Reduced Payment Period"), monthly payments shall be interest only, calculated at an interest rate of 3% per annum on the outstanding principal balance of the Mortgage and Note, the balance of such interest shall continue to accrue, without interest, at an interest rate of 3% per annum and shall be deferred until the Maturity Date, whether by default or acceleration.

(d)    Commencing with the monthly payment due on August 1, 2011, and for the balance of the term of the Mortgage and the Note, the monthly payments of principal and interest (at the rate of 6.00% per annum), shall be $21,400.00.

(f)    On the Maturity Date, stated or accelerated, whether by default or acceleration, the Loan payoff or an assumption of the Loan, the following shall be due and payable (i) the balance of the deferred interest accruing during the Reduced Payment Period, (ii) the Fee Payment, and (iii) all outstanding principal, together with all other accrued and unpaid interest and any and all other amounts of any nature whatsoever due hereunder."

4.    Mortgagor shall continue to make monthly payments of Deposits in the amount of $19,400.00 per month, which amount is subject to change as set forth in Section 4 of the Mortgage.

NC CLERK

5       This Modification does not constitute a Fee Payment Date and the Fee Payment shall be due and payable in full on the next Fee Payment Date.

6.      Mortgagor's representations and warranties set forth in the Note, the Mortgage and the other Loan Documents are true and correct as of the date hereof as if though made on the date hereof.

7.      The terms herein may not be waived, changed, modified, terminated or discharged orally, but by an agreement in writing signed by the party against whom enforcement of such waiver, change, modification, termination and discharge is sought.

8.      Whenever in the Note or the Mortgage reference is made to the "Note" or the "Mortgage", the same shall mean the Note or the Mortgage, as the case may be, as previously modified and assumed, as extended by this agreement and as may hereafter be modified or amended.

9.      Simultaneously with the execution and delivery of this Agreement, Mortgagor shall be obligated to pay for all mortgage taxes, recording fees and other charges due in connection with the recordation of this Agreement.

10.     This Agreement shall be governed by the laws of the State of New York.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, this instrument has been duly executed by the Mortgagor and the Mortgagee,

EMPIRE PLAZA REALTY LLC,
a New York limited liability company

By: _____

Ely (a/k/a Eli) Kaffash
Member

INTERVEST NATIONAL BANK

By: _____

Lowell S. Dansker
Chief Executive Officer

NC CLERK

STATE OF NEW YORK )
                    ss.:
COUNTY OF Nassa )

On the 12 day of May, 2010, before me, the undersigned, personally appeared Ely (a/k/a Eli) Kaffash, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
STEVEN TUCHLER
Notary Public, State of New York
No. 01TU5016085
Qualified in Nassau County
Commission Expires Aug. 2, 20 13

STATE OF NEW YORK )
                            ss.:
COUNTY OF NEW YORK )

·On the 1ᵀʰ day of May, 2010, before me, the undersigned, personally appeared Lowell S. Dansker, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

CARYN J. ETTINGER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02ET6204324
Qualified in New York County
My Commission Expires April 20, 2013

NC CLERK

# EXHIBIT A

## Mortgage Schedule

Mortgage (and Assignment of Leases and Rents, and Security Agreement)

Mortgagor     EMPIRE PLAZA REALTY LLC

Mortgagee     INTERVEST NATIONAL BANK

| | |
|---|---|
| Amount | $3,400,000.00 |
| Dated | September 17, 2008 |
| Recorded | October 16, 2008 |
| Liber | 33297 |
| Page | 486 |

## EXHIBIT B

## PROPERTY DESCRIPTION

## FEDERAL STANDARD ABSTRACT, INC

### Title Number:  FSA282-02856N

### S C H E D U L E  A

ALL that certain plot, piece or parcel of land, situate, lying and being at West Hempstead,  in the Town of Hempstead, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Hempstead Turnpike with the easterly side of Arden Boulevard;

RUNNING THENCE along the easterly side of Arden Boulevard, North 10 degrees 25 minutes 40 seconds East, a distance of 185.23 feet to the corner formed by the intersection of the easterly side of Arden Boulevard with the southerly side of Parker Avenue (Park Avenue);

THENCE along the southerly side of Parker Avenue, South 79 degrees 34 minutes 20 seconds East, a distance of 169.63 feet;

THENCE South 11 degrees 06 minutes 10 seconds West, a distance of 184.17 feet to the northerly side of Hempstead Turnpike;

THENCE along the northerly side of Hempstead Turnpike, North 79 degrees 56 minutes 20 seconds West, a distance of 167.46 feet to the corner aforementioned at the point or place of BEGINNING.

NE CLERK

## MODIFICATION OF
## MORTGAGE AND NOTE

between

EMPIRE PLAZA REALTY LLC

and

INTERVEST NATIONAL BANK

Dated:        May 17, 2010, effective as of April 1, 2010

ADDRESS OF
PROPERTY: 300 Hempstead Turnpike
            West Hempstead, New York

Section: 33, Block: 502, Lot: 233
Town of Hempstead, County of Nassau

RECORD AND RETURN TO:

Intervest National Bank
One Rockefeller Plaza, Suite 400
New York, New York 10020-2002

## SECTION 255 AFFIDAVIT
### MODIFICATION OF MORTGAGE

STATE OF NEW YORK )
                ) ss.:
COUNTY OF NEW YORK )

ELY (a/k/a Eli) KAFFASH, being duly sworn, deposes and says, that he is over the age of twenty-one years and that he resides at 36 Elm Street, Great Neck, New York 11021, and states as follows:

    Intervest National Bank ("Lender") is the owner and holder of the certain Mortgage (and Assignment of Leases and Rents, and Security Agreement) made by Empire Plaza Realty LLC to Intervest National Bank (the "Mortgage") dated September 17, 2008 and recorded _10/16/_ , 2008 as Reel 33297, page 486 , in the office of the County Clerk, Nassau County, New York (the "Clerk's Office"), covering the property located at 300 Hempstead Turnpike, West Hempstead, New York, on which the mortgage tax was paid in full.

    Borrower has executed and delivered to Lender a Modification of Mortgage and Note (the "Modification") dated as of May 17, 2010 and effective as of April 1, 2010, which Modification does not increase the principal balance under the Mortgage and is intended to be recorded in the Clerk's Office concurrently herewith.

    The maximum amount of principal indebtedness secured by the Mortgage was the face amount thereof and the mortgage recording tax on said amount was duly paid at the time of recording of said Mortgage.

    The Modification herewith tendered for recording is given for the purpose of further securing the same principal indebtedness as is secured by the Mortgage and said Modification does not create or secure any new or further indebtedness or obligation other than the principal indebtedness secured by, or which under any contingency may be secured by, said Mortgage. There have been no reloans or readvances on said Mortgage and Note.

    WHEREFORE, deponent respectfully requests that the Modification tendered herewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

Dated: May 12, 2010

ELY (a/k/a Eli) KAFFASH

Sworn to before me this
12 day of May, 2010

Notary Public

STEVEN TUCHLER
Notary Public, State of New York
No. 01TU5016085
Qualified in Nassau County
Commission Expires Aug. 2, 20 13

# MORTGAGE NOTE

$3,400,000.00                                                    New York, New York
                                                                September 17, 2008

      FOR VALUE RECEIVED, EMPIRE PLAZA REALTY LLC, a New York limited liability company, having an address at 98 Cuttermill Road, Suite 442B, Great Neck, New York 11021 (the "Maker"), promises to pay to INTERVEST NATIONAL BANK, or order, at One Rockefeller Plaza, Suite 400, New York, New York 10020-2002 or at such other place as may be designated in writing by the holder of this mortgage note (the "Note"), the principal sum of THREE MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($3,400,000.00) with interest thereon and payable as set forth on Schedule A annexed hereto.

      IT IS HEREBY EXPRESSLY AGREED, that the said principal sum secured by this Note shall become due at the option of the holder thereof on the happening of any default or event by which, under the terms of the Mortgage securing this Note, said principal sum may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in said Mortgage are hereby made part of this instrument.

      Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived.

      This Note is secured by and subject to the terms of a Mortgage (and Assignment of Leases and Rents and Security Agreement) (the "Mortgage"), of even date herewith, made by the Maker in favor of payee on the property located at 300 Hempstead Turnpike, West Hempstead, New York.

      This Note may not be changed or terminated orally. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Mortgage.

               EMPIRE PLAZA REALTY LLC
               a New York limited liability company

By: _____
          Ely (a/k/a Eli) Kaffash
          Member

## **Acknowledgement**

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

On the 17th day of September in the year 2008 before me, the undersigned, personally appeared ELY (a/k/a ELI) KAFFASH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

Karen Corso
Notary Public, State of New York
No. 01CO6031691
Qualified in Suffolk County
Commission Expires Oct. 12, 20 09

## SCHEDULE A

### Payment of Indebtedness

The indebtedness evidenced by the Mortgage and this Note shall be payable as follows:

(a)    A payment of interest only calculated at the Interest Rate for the period from and including the date of the Mortgage and this Note to and including September 30, 2008, shall be due and payable upon the execution of the Mortgage and this Note. Thereafter, payments in an amount set forth in paragraph (b) below, applied in accordance with the Mortgage, shall be due and payable on the first day of each calendar month, commencing on November 1, 2008, and continuing thereafter on the first day of each calendar month to and including September 1, 2013, on which date all outstanding principal, together with all accrued and unpaid interest and any and all other amounts of any nature whatsoever due hereunder, shall be due and payable in full. In addition, the Fee Payment shall be due and payable on each and every Fee Payment Date which may arise under the Mortgage.

(b)    The monthly payments commencing with the payment due on November 1, 2008 and for the balance of the term of the Mortgage and this Note shall be $21,950.00.

(c)    The Interest Rate in effect on any day throughout the term of the Mortgage and this Note shall be 6.00% per annum.

1433-50-0062
300 Hempstead Tpke

## New York State Department of State
## Uniform Commercial Code

Filing Data Report

Please note that this record report has been generated by an independent searcher, using the
Department of State's Uniform Commercial Code On-Line Database. This report lists filing
records on file as of November 26, 2010, 11:59 PM. However, the information contained in
this report is NOT an official record of the Department of State and may contain filings filed
after this date.

**Name of Debtor Organizaton Searched:** .

**CONTAINS** EMPIRE PLAZA REALTY LLC  **\*All Filings**

Your name selection(s) has returned 1 filing histories.

Back Button

[ View First Page(s) ]   [ Back ]

Filing histories 1 to 1.

| 1. | Debtor Names: | EMPIRE PLAZA REALTY LLC | | 98 CUTTERMILL ROAD, SUITE 442B, GREAT NECK, NA 11021, USA | | |
|----|----|----|----|----|----|----|
| | Secured Party Names: | INTERVEST NATIONAL BANK | | ONE ROCKEFELLER PLAZA, SUITE 400, NEW YORK, NY 10020-2002, USA | | |
| | File no. | File Date | Lapse Date | Filing Type | Pages | Image |
| | 200811100756382 | 11/10/2008 | 11/10/2013 | Financing Statement | 4 | View |

Back Button

[ View First Page(s) ]   [ Back ]

\* Images marked NA are not available on this webpage.
[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

FA78202852 N

I 15211    2008 NOV 10  AM 9: 00

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> **Intervest National Bank**
> **One Rockefeller Plaza, Suite 400**
> **New York, New York 10020-2002**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **EMPIRE PLAZA REALTY LLC** | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **98 Cuttermill Road, Suite 442B** | **Great Neck** | | **11021** | **USA** |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION |
|---|---|---|
| | **Real Estate** | **New York** |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION |
|---|---|---|
| | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Intervest National Bank** | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **One Rockefeller Plaza, Suite 400** | **New York** | **NY** | **10020-2002** | **USA** |

4. This FINANCING STATEMENT covers the following collateral:

**See Schedule I annexed hereto.**

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

**Intervest – 300 Hempstead**

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# FILING NUMBER: 200811100756382

**I 15211**     2008 NOV 10  AM 9: 00

# UCC FINANCING STATEMENT **ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | 9a. ORGANIZATION'S NAME |
|OR| **EMPIRE PLAZA REALTY LLC** |

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|

**10.MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME |
|OR| |

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION |
|---|---|---|---|

**12.** ☐ ADDITIONAL SECURED PARTY'S <u>or</u> ☐ ASSIGNOR S/P'S  NAME - insert only <u>one</u> name (12a or 12b)

| | 12a. ORGANIZATION'S NAME |
|OR| |

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☑ fixture filing.

**14.** Description of real estate:

**300 Hempstead Turnpike, West Hempstead, New York**

**Section: 33, Block: 502, Lot: 233**

**As more particularly described in Schedule A annexed hereto.**

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

**17.** Check <u>only</u> if applicable and check <u>only</u> one box.
Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

**18.** Check <u>only</u> if applicable and check <u>only</u> one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)**

## SCHEDULE I

(1) all machinery, equipment, apparatus, fixtures and instruments of conveyance located at the Mortgaged Premises;

(2) all documents of title, policies and certificates of insurance, and other rights to payment, together with all guarantees and security therefor (including any security deposits) relating solely to the Mortgaged Premises;

(3) all contract rights, licenses, legal claims and claims for tax refunds relating solely to the Mortgaged Premises;

(4) all accounts of Debtor with the Secured Party relating solely to the Mortgaged Premises, all investments and reimbursements of amounts from time to time credited to such accounts, and all interest, dividends, distributions and other proceeds payable on or with respect to such accounts;

(5) all leases, licenses, permits, approvals, plans and specifications, contracts and agreements of any kind and nature whatsoever, in connection with the Mortgaged Premises, whether oral or written, and all profits, rentals, receipts, income and proceeds arising therefrom;

(6) the rents, proceeds, products, issues, profits and accessions of and to all of the foregoing;

(7) all utility or municipal deposits made by or on behalf of Debtor or made in connection with the Mortgaged Premises;

(8) all plans, drawings, specifications, site plans, subdivision maps, sketches, samples, contracts and agreements, now or hereafter made, which relate to the Mortgaged Premises, its maintenance, operation, restoration, management, construction, alteration, improvement and/or development; and

(9) any and all permits, certificates, warranties, guarantees and approvals, howsoever characterized, issued or in any way furnished in connection with the Mortgaged Premises.

## FEDERAL STANDARD ABSTRACT, INC

Title Number:  FSA282-02856N  | | 52 | |        2008 NOV 10  AM !

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being at West Hempstead, in the Town of Hempstead, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Hempstead Turnpike with the easterly side of Arden Boulevard;

RUNNING THENCE along the easterly side of Arden Boulevard, North 10 degrees 25 minutes 40 seconds East, a distance of 185.23 feet to the corner formed by the intersection of the easterly side of Arden Boulevard with the southerly side of Parker Avenue (Park Avenue);

THENCE along the southerly side of Parker Avenue, South 79 degrees 34 minutes 20 seconds East, a distance of 169.63 feet;

THENCE South 11 degrees 06 minutes 10 seconds West, a distance of 184.17 feet to the northerly side of Hempstead Turnpike;

THENCE along the northerly side of Hempstead Turnpike, North 79 degrees 56 minutes 20 seconds West, a distance of 167.46 feet to the corner aforementioned at the point or place of BEGINNING.

| | |
|---|---|
| For Conveyancing ONLY | TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises. |
| For Information ONLY | The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property. |

# New York State Department of State
## Uniform Commercial Code

Filing Data Report

Please note that this record report has been generated by an independent searcher, using the Department of State's Uniform Commercial Code On-Line Database. This report lists filing records on file as of October 25, 2010, 11:59 PM. However, the information contained in this report is NOT an official record of the Department of State and may contain filings filed after this date.

**Name of Debtor Organizaton Searched:**

**PARTIAL** EMPIRE PLAZA REALTY  **\*All Filings**

Your name selection(s) has returned 1 filing histories.

Back Button

View First Page(s)     Back

Filing histories 1 to 1.

| | | | |
|---|---|---|---|
| 1. Debtor Names: | **EMPIRE PLAZA REALTY LLC** | **98 CUTTERMILL ROAD, SUITE 442B, GREAT NECK, NA 11021, USA** | |
| Secured Party Names: | **INTERVEST NATIONAL BANK** | **ONE ROCKEFELLER PLAZA, SUITE 400, NEW YORK, NY 10020-2002, USA** | |

| File no. | File Date | Lapse Date | Filing Type | Pages | Image |
|---|---|---|---|---|---|
| 200811100756382 | 11/10/2008 | 11/10/2013 | Financing Statement | 4 | View |

Back Button

View First Page(s)     Back

\* Images marked NA are not available on this webpage.
[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

SCANNED

JUN - 3 2011

INTERVEST NATIONAL BANK

FA282-02852 N

115211

2008 NOV 10  AM 9: 00

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

    Intervest National Bank
    One Rockefeller Plaza, Suite 400
    New York, New York 10020-2002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EMPIRE PLAZA REALTY LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 98 Cuttermill Road, Suite 442B | Great Neck | | 11021 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Real Estate | 1f. JURISDICTION OF ORGANIZATION New York |
|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION |
|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Intervest National Bank | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Rockefeller Plaza, Suite 400 | New York | NY | 10020-2002 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Schedule I annexed hereto.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING
6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional]  ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2
8. OPTIONAL FILER REFERENCE DATA

Intervest - 300 Hempstead

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## FILING NUMBER: 200811100756382

115211        2008 NOV 10  AM 9: 00

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME

OR **EMPIRE PLAZA REALTY LLC**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

ADD'L INFO RE | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION
ORGANIZATION DEBTOR

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S  NAME - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☑ fixture filing.

14. Description of real estate:

**300 Hempstead Turnpike, West Hempstead, New York**

**Section: 33, Block: 502, Lot: 233**

**As more particularly described in Schedule A annexed hereto.**

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

## SCHEDULE I

(1) all machinery, equipment, apparatus, fixtures and instruments of conveyance located at the Mortgaged Premises;

(2) all documents of title, policies and certificates of insurance, and other rights to payment, together with all guarantees and security therefor (including any security deposits) relating solely to the Mortgaged Premises;

(3) all contract rights, licenses, legal claims and claims for tax refunds relating solely to the Mortgaged Premises;

(4) all accounts of Debtor with the Secured Party relating solely to the Mortgaged Premises, all investments and reimbursements of amounts from time to time credited to such accounts, and all interest, dividends, distributions and other proceeds payable on or with respect to such accounts;

(5) all leases, licenses, permits, approvals, plans and specifications, contracts and agreements of any kind and nature whatsoever, in connection with the Mortgaged Premises, whether oral or written, and all profits, rentals, receipts, income and proceeds arising therefrom;

(6) the rents, proceeds, products, issues, profits and accessions of and to all of the foregoing;

(7) all utility or municipal deposits made by or on behalf of Debtor or made in connection with the Mortgaged Premises;

(8) all plans, drawings, specifications, site plans, subdivision maps, sketches, samples, contracts and agreements, now or hereafter made, which relate to the Mortgaged Premises, its maintenance, operation, restoration, management, construction, alteration, improvement and/or development; and

(9) any and all permits, certificates, warranties, guarantees and approvals, howsoever characterized, issued or in any way furnished in connection with the Mortgaged Premises.

# FEDERAL STANDARD ABSTRACT, INC

Title Number:  FSA282-02856N  **I I 52 I I**          **2008 NOV 10  AM** :

## S C H E D U L E   A

ALL that certain plot, piece or parcel of land, situate, lying and being at West Hempstead, in the Town of Hempstead, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Hempstead Turnpike with the easterly side of Arden Boulevard;

RUNNING THENCE along the easterly side of Arden Boulevard, North 10 degrees 25 minutes 40 seconds East, a distance of 185.23 feet to the corner formed by the intersection of the easterly side of Arden Boulevard with the southerly side of Parker Avenue (Park Avenue);

THENCE along the southerly side of Parker Avenue, South 79 degrees 34 minutes 20 seconds East, a distance of 169.63 feet;

THENCE South 11 degrees 06 minutes 10 seconds West, a distance of 184.17 feet to the northerly side of Hempstead Turnpike;

THENCE along the northerly side of Hempstead Turnpike, North 79 degrees 56 minutes 20 seconds West, a distance of 167.46 feet to the corner aforementioned at the point or place of BEGINNING.

For Conveyancing     TOGETHER with all the right, title and interest of the party of the first part, of, in
ONLY                 and to the land lying in the street in front of and adjoining said premises.

For Information      The policy to be issued under this report will insure the title to such buildings and
ONLY                 improvements erected on the premises which by law constitute real property.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------------X
INTERVEST NATIONAL BANK,

                                              Plaintiff,

                          -against-

EMPIRE PLAZA REALTY LLC, ELY
KAFFASH A/K/A ELI KAFFASH, MORAD
KHAKSHOUR A/K/A MORRIS KHAKSHOUR,
MASIH KAFFASH, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
"JOHN DOE NO. I" TO "JOHN DOE NO. XXX",

                                              Defendants.
-----------------------------------------------------------------------X

**ASSIGNMENT AND
ASSUMPTION OF
CAUSE OF ACTION**

Index No. 4416/13

        FOR VALUE RECEIVED, plaintiff INTERVEST NATIONAL BANK, a

National Banking Association, with an address at One Rockefeller Plaza, Suite 400, New York,

New York 10020 ("Assignor"), does hereby assign to JJAM CAPITAL LLC, a New York

limited liability company, with an address c/o Superior Management Incorporated, 50 Bank

Street, New York, NY 10014, all of Assignor's right, title and interest in and to the subject matter

of the above-entitled action and the causes of action alleged in the complaint, which action was

filed in the Supreme Court of the State of New York, County of New York, and does hereby

authorize and consent that the Assignee be substituted as plaintiff, and proceed with the said

action as plaintiff in Assignor's place, and to take all steps and execute all papers necessary for

the continuation of said action and to receive and collect the proceeds and benefits of said action

whether by way of settlement, judgment, payment, collection or otherwise, and Assignee

herewith accepts the foregoing assignment and assumes all of the obligations and liabilities of

Assignor as mortgagee under the subject mortgage and as plaintiff in said action.

IN WITNESS WHEREOF, the Assignor and Assignee have hereunto set their

hand as of the 4th day of June, 2013.

ASSIGNOR:
INTERVEST NATIONAL BANK

By: _____

Lowell S. Dansker,
Chief Executive Officer

ASSIGNEE:
JJAM CAPITAL LLC

By: _____
Adam Nagih, Member

STATE OF NEW YORK, COUNTY OF NEW YORK  ss:

On the 4th day of June in the year 2013, before me, the undersigned, personally appeared Lowell S. Dansker, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CHARLES GOLIN
Notary Public, State of New York
No. 02GO5020830
Qualified in Queens County
Commission Expires Nov. 29, 13.   6/14/17

STATE OF NEW YORK, COUNTY OF NEW YORK  ss:

On the 4th day of June in the year 2013, before me, the undersigned, personally appeared Adam Nagih personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CHARLES GOLIN
Notary Public, State of New York
No. 02GO5020830
Qualified in Queens County
Commission Expires Nov. 29, 19.   6/17/17

# Exhibit B

**ORIGINAL**

At an IAS Part _15_ of the
Supreme Court held in and
for the County of Nassau
County at the Courthouse
thereof located at 100
Supreme Court Drive,
Mineola, New York, on the
_____ day of _____,
2013.

COMMERCIAL FORECLOSURE — NOT A HOME LOAN UNDER RPAPL § 1304 AND
NOT SUBJECT TO A MANDATORY SETTLEMENT CONFERENCE PURSUANT TO
CPLR § 3408

PRESENT:  HON.  _Vito M. DeStefano_
                         J.S.C.

----------------------------------------------x
INTERVEST NATIONAL BANK,

                        Plaintiff,

                                              Index No:4416/13

          -against-

EMPIRE PLAZA REALTY LLC, ELY              ORDER APPOINTING
KAFFASH a/k/a ELI KAFFASH, MORAD          RECEIVER
KHAKSHOUR a/k/a MORRIS KHAKSHOUR,
MASIH KAFFASH, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
"JOHN DOE NO. I" to JOHN DOE NO.
XXX," inclusive, the last thirty
names being fictitious and unknown
to plaintiff, the persons or parties
parties intended being the tenants,
occupants, persons or entities, if
any, having or claiming an interest
in or lien upon the premises described
in the complaint.

                        Defendants.
----------------------------------------------x

          On reading and filing the annexed Affirmation of Nili

Farzan, Esq., affirmed on April 18, 2013, the Affidavit of John

B.  Carella,  Vice  President  of  Intervest  National  Bank

("Intervest"), sworn to on April 15, 2013, and upon the exhibits annexed thereto, and upon all other papers and proceedings already had herein, and it appearing to the satisfaction of this Court that this action is brought to foreclose a mortgage on a parcel of real estate in the County of Nassau from which it appears that the Plaintiff is the owner and holder of a certain mortgage on the premises hereinafter described, and the Defendant, Empire Plaza Realty LLC, is in default of the mortgage and that the within proceeding has been instituted to foreclose on said mortgage and that said mortgage contains a clause authorizing the appointment of a receiver for all rents and profits of said premises, without notice, in the event of foreclosure thereof.

NOW, on motion of Jaspan Schlesinger LLP, attorneys for the Plaintiff, it is

ORDERED, that  JEFFREY  MILLER  #50164
("Receiver") of  WESTERMAN  BALL  EDERER MILLER LLC  516-622-920.
is hereby appointed with the usual powers and direction, as receiver for the benefit of the Plaintiff of all the rents and profits now due and to become due during the pendency of this action and issuing out of the mortgaged premises all as set forth in the Complaint and known as 300 Hempstead Turnpike, West Hempstead, New York ("Premises") as more fully described in Schedule A annexed hereto; and it is further

NXF/D879804v1/M062484/C0156450

ORDERED, that the Receiver is authorized to forthwith take charge, and enter into possession of the Premises; and it further *Ordered, that payment of the Receiver's fees shall be determined upon written application to this court; and it is further* ORDERED, that the Receiver, prior to engaging in any action that may result in expenses being incurred, be and he/she hereby is directed to contact the Plaintiff's attorney, Antonia M. Donohue, of Jaspan Schlesinger LLP, 300 Garden City Plaza, Garden City, New York 11530 to ascertain the status of the foreclosure action and whether he/she should proceed with his/her duties; and it is further

ORDERED, that before entering upon his/her duties, the Receiver shall be sworn faithfully and fairly to discharge the trust committed to him/her, and the Receiver shall execute to THE PEOPLE OF THE STATE OF NEW YORK and file with the Clerk of the Court a bond with sufficient sureties in the sum of $ 325,337.00, conditioned for the faithful performance of his/her duties as such Receiver; and it is further

ORDERED, that the Receiver file an oath with the County Clerk; and it is further

ORDERED, that the Receiver be and is hereby directed to demand, collect and receive from the occupants, tenants, and licensees in possession of the Premises, or others liable therefor, inclusive of the mortgagor, all rents and licensee fees thereof to become fixed and due, now due and unpaid, and

hereafter to become due and that the Receiver be and is hereby authorized to institute and carry on all legal proceedings necessary for the protection of the Premises and/or to recover possession of the whole, or any part thereof, and/or apply to the Court to fix reasonable rental value and licensee fee value of the Premises and/or to compel the tenants and occupants of the Premises to attorn to the Receiver; and it is further

ORDERED, that the Receiver may institute and prosecute suits for the collection of rent, licensee fees and other charges now due or hereafter to become due or fixed, and summary proceedings for the removal of any tenants or licensees or other persons therefrom; and it is further

ORDERED, that pursuant to the provisions of the General Obligations Law section 7-105, any person or entity holding any deposits or advances of rental as security under any lease or license agreement affecting space in the Premises affected by this action shall turn same over to the Receiver within five (5) days after the Receiver shall have qualified; and thereupon the said Receiver shall hold such security subject to such disposition thereof as shall be provided in an order of this Court to be made and entered in this action; and it is further

ORDERED, that any person or entity in possession of same shall turn over to the Receiver all rent lists, orders, unexpired and expired leases, agreements, correspondence,

notices, and registration statements relating to rental spaces or facilities in the Premises; and it is further

ORDERED, that the Defendants and their agents, officers, employees and contractors are hereby directed to deliver and attorn to the Receiver all rent lists, shareholder lists, unexpired and expired leases, proprietary leases, agreements, contracts, recognition agreements, corporate by-laws, correspondence, notices registration statements, tenants' securities, shareholders, escrows, and lists of current rent or other monies, arrears, relating to space in the Premises; and it is further

ORDERED, that notwithstanding anything to the contrary contained in this order, the Receiver shall not, without the further, prior order of this Court, upon prior notice to Plaintiff, make improvements or substantial repairs to the Premises at a cost in excess of /000.00 [$2,500.00] and it is further

ORDERED, that the Receiver forthwith deposit all monies received by him/her at the time he/she receives same in his/her own name as Receiver in _____ Valley National Bank 222 OLD COUNTRY ROAD MINEOLA NY 11501 (516) 437-1000 and no withdrawals shall be made therefrom, except as directed and countersigned by the Receiver's sureties by the Court or on a draft or check signed by the Receiver; and it is further

ORDERED, that the Receiver furnish the Plaintiff's attorneys with monthly statements of the receipts and

expenditures of this receivership, together with a photocopy of the monthly statements received from said depository; and it is further

ORDERED, that the Receiver is prohibited from incurring obligations in excess of the monies in his/her hands without further order of the Court or written consent of Plaintiff; and it is further

ORDERED, that the Receiver is not authorized to appoint a managing agent to rent and collect the rents of the Premises or to pay for the reasonable use of such agent's services out of the rents received without the Court's permission; and it is further

ORDERED, that, in compliance with Section 5228(a) of the Civil Practice Law and Rules, the Receiver shall: procure liability insurance; from time to time, rent or lease all or any part of the Premises for terms of one (1) year or such longer terms as may be required by the ~~City and~~ State of New York pursuant to applicable rent rules; keep the Premises insured against loss or damage by fire and other hazards for the benefit of the Plaintiff in the event Plaintiff is not the beneficiary of the owner's insurance or Plaintiff does not have its own insurance therefor; keep the Premises in repair; pay the taxes, assessments, water rates and sewer rents, vault charges, salaries of employees, supplies and other charges; and procure



such fire, plate glass, liability and other insurance as may be

reasonably necessary thereon; and it is further

ORDERED, that the tenants, subtenants or other persons in possession of the Premises attorn to the Receiver, and pay over to the Receiver all rents, licensee fees and other charges of the Premises or other monies of the Premises now due and unpaid or that may hereafter become due; and that the Defendants and their agents, officers, employees and attorneys are enjoined and restrained from: (i) collecting the rents, licensee fees and other charges of the Premises; (ii) interfering in any manner with the Premises or its possession, or with the Receiver's management thereof; and (iii) transferring, removing or in any way disturbing any of the occupants or employees; and that all of the tenants of the Premises and other persons liable for the rents be and they hereby are enjoined and restrained from paying any rents for the Premises to the Defendants, their agents, servants or attorneys; and it is further

ORDERED, that all persons now, or hereafter coming into possession of the Premises or any part thereof, and not holding such possession under valid and existing leases, do forthwith surrender such possession to the Receiver at the option of the Receiver, subject to emergency rent laws, if any; and it is further

ORDERED that by accepting this appointment the referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to section 36.2 (c) ("Disqualifications from appointment"), and section 36.2 (d) ("Limitations on appointments based upon compensation").



ORDERED, that the Receiver, after paying the expenses of the management and care of the Premises, retain the balance of the money which may come into his/her hands until the sale of the Premises under the judgment to be entered in this action and/or until further order of the Court; and it is further

ORDERED, that the owner of the Premises and any other person or entity in possession thereof turn over to the Receiver all rents collected from the Premises from and after the date of this Order; and it is further

ORDERED, that the Receiver comply with all lawful requirements of any municipal department or other authority of the municipality in which the Premises is situated; and it is further

ORDERED, that the Receiver or any party hereto may at any time, on proper notice to all parties who may have appeared in this action, apply to this Court for an order or for instructions or powers necessary to enable such Receiver to properly and faithfully perform his/her duties; and it is further

ORDERED, that the Receiver appointed herein shall continue in his/her duties as such, until this receivership is terminated by court order; and it is further

ORDERED, that the Receiver appointed herein shall file a monthly accounting from the date of this Order, and each and

every month thereafter during the pendency and existence of said receivership, with copies of said accounting to be forwarded to Plaintiff's attorneys; and it is further

ORDERED, that the Receiver, upon receiving written notification from Plaintiff's attorneys that the borrower has entered into a forbearance agreement with Plaintiff, shall cease to perform his/her duties until further *written* notification from *and so ordered by this court* Plaintiff's attorneys; and it is further

ORDERED, that the appointee named herein shall comply with Section 35a of the Judiciary Law, CPLR Sections 6401-6404, RPAPL Section 1325, Service Members Civil Relief Act [50 U.S.C.S. Appendix. §§501, et seq.], and Part 36 of the Rules of the Chief Judge.

NOTWITHSTANDING ANY OTHER PROVISION OF THIS ORDER TO THE CONTRARY, THE RECEIVER SHALL NOT APPOINT AN ATTORNEY, AGENT, *property man* APPRAISER, *real estate broker,* AUCTIONEER OR ACCOUNTANT WITHOUT PRIOR ORDER OF THIS COURT *and said Receiver is not authorized to pay fees to any secondary appointees without further order of this court.*

ENTER,

HON. _____

J.S.C.

Exhibit C

On Tue, Jul 2, 2013 at 11:54 AM, craig lieber <liebermc@yahoo.com> wrote:

Ely told me today that his lawyers had advised him to tell all the tenants that we should be sending him the rent and not the receiver.  He says as long as they have not foreclosed upon, that he is still the owner, still has the deed, and still has the right to collect and evict.

I have already mailed a check to the receiver, but could stop the payment until there is more clarity.

let me know

thanks

Exhibit D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                          Chapter 11

      Empire Plaza Realty LLC,                        Case no.  13-73526

                        Debtor.
------------------------------------------------------------x

## <u>INTERIM STIPULATION</u>

        It is hereby stipulated by and among Empire Plaza Realty LLC, ("Debtor"), JJAM

Capital LLC ("Mortgagee") and Jeffrey Miller ("Receiver") as follows:  Subject to a full

reservation of rights of all parties, pending further order of the Bankruptcy Court, the Receiver is

temporarily excused from compliance with subsections (a), (b) and (c) of section 543 of the

Bankruptcy Code, and is authorized to take such action as is necessary to preserve the property

located at 300 Hempstead Turnpike, West Hempstead, New York 11552, including collecting the

rents and disbursing funds, with such disbursements limited to those necessary to preserve such

property.

Dated: Westbury, New York
       July 10, 2013

                                         Empire Plaza Realty LLC, by its attorneys
                                         Pryor & Mandelup, L.L.P.

                                         By:      <u>s/ Jack Hall              </u>
                                                 675 Old Country Road
                                               Westbury, New York  11590
                                             (516) 997-0999

Dated: New York, New York
       July 10, 2013

                                         JJAM Capital LLC, by its attorneys,
                                         Backenroth Frankel & Krinsky, LLP

                                         By:      <u>s/Mark Frankel           </u>
                                                   489 Fifth Avenue
                                               New York, New York  11023
                                             (212) 593-1100

Dated: Uniondale, New York
      July 10, 2013

                                  Jeffrey Miller, as Receiver, by his attorneys,
                                  Westerman Ball Ederer Miller & Sharfstein
                                  LLP

                                By:     s/ Thomas A. Draghi_____
                                            1201 RXR Plaza
                                            Uniondale, New York  11556
                                          (516) 622-9200

853079

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                         Chapter 11

    Empire Plaza Realty LLC                          Case no.  13-73526

                 Debtor.
-------------------------------------------------------------x

## NOTICE TO TENANTS TO PAY RENT TO RECEIVER

**PLEASE TAKE NOTICE,** that on July 3, 2013, Empire Plaza Realty LLC (the "Debtor") filed a Chapter 11 Petition in the United States Bankruptcy Court for the Eastern District of New York in Central Islip.

**PLEASE TAKE FURTHER NOTICE,** that before the Bankruptcy was filed, Jeffrey A. Miller (the "Receiver") was appointed Receiver of 300 Hempstead Turnpike, West Hempstead, New York 11552.

**PLEASE TAKE FURTHER NOTICE**, that the Bankruptcy Court has not yet decided whether the Receiver will remain in possession for the duration of the Bankruptcy Case.

**PLEASE TAKE FURTHER NOTICE**, that, in accordance with the accompanying stipulation among the Receiver, the Debtor, and JJAM Capital LLC, the Debtor's mortgagee, pending further notice from the Receiver all tenants shall pay rent to the Receiver and direct any management questions to the Receiver.

**PLEASE TAKE FURTHER NOTICE**, that any questions regarding this notice shall be directed to Alan Rosenberg c/o Colliers International, LI Management, LLC at (516) 284-0400, the Receiver's managing agent.

**Jeffrey A. Miller, Receiver**

*/s/ Jeffrey A. Miller*, Receiver